# EXHIBIT C

1 of 100 DOCUMENTS

**SONY ELECTRONICS, INC., SONY COMPUTER ENTERTAINMENT AMERICA, INC., SONY PICTURES ENTERTAINMENT, INC., SONY CONNECT, INC., SONY ONLINE ENTERTAINMENT, INC., SONY CORPORATION OF AMERICA, SONY BMG MUSIC ENTERTAINMENT, INC., SONY ERICSSON MOBILE COMMUNICATIONS (USA), INC., Plaintiffs, v. ORION IP, LLC, Defendant.**

**C.A. No. 05-255 (GMS)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 9834*

**March 14, 2006, Decided**

**COUNSEL:** [*1] For Sony Electronics Inc, Sony Computer Entertainment America Inc., Sony Pictures Entertainment, Inc., Sony Connect Inc., Sony Online Entertainment Inc., Sony Corporation of America, Sony BMG Music Entertainment Inc., Sony Ericsson Mobile Communications (USA) Inc., Plaintiffs: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Orion IP LLC, Defendant: Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM

On November 23, 2004, Orion IP, LLC ("Orion"), a Delaware corporation headquartered in Texas, filed a patent infringement suit in the United States District Court for the Eastern District of Texas against fifteen individual defendants, none of whom are parties to this action. However, on February 10, 2005, Orion amended its complaint to add additional parties, including Sony Corporation of America ("SCA"). On April 7, 2005, SCA responded by filing an answer in the Texas action asserting the affirmative defenses of non-infringement and invalidity as to both patents in suit. Then, on May 2, 2005, SCA and seven other so-called non-SCA plaintiffs filed [*2] an action in this court seeking a declaratory judgment of non-infringement and invalidity with respect to the same patents as those asserted against SCA in the Texas action. However, although the patents at issue are

the same, the potentially-infringing products of the non-SCA plaintiffs -- their websites -- are allegedly different than the accused SCA website. Presently before the court is Orion's motion to either dismiss or stay this case under the first-filed rule, or alternatively, to transfer it to the Eastern District of Texas pursuant to *28 U.S.C.A. § 1404(a) (1993)*. (D.I. 11.)

Generally speaking, the first-filed rule is as simple as its name suggests: "where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances." *Corixa Corp. v. IDEC Pharm. Corp., 2002 U.S. Dist. LEXIS 2980, *304, No. 01-615-GMS, 2002 WL 265094, at *1 (D. Del. Feb. 25, 2002)*. The present case presents a small complication, however, because only one of the plaintiffs in this action is a defendant in the Texas action. But, that complication is not too difficult to overcome [*3] because "Civil Procedure *Rule 21* permits any claim against a party to be severed and proceeded with separately." *Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp., 125 F.2d 1008, 1009 (3d Cir. 1942)*. Moreover, "*Rule 21* permits a court to sever claims *sua sponte.*" *United States v. AMTRAK, No. 86-1094, 2004 U.S. Dist. LEXIS 10867, at *21 (E.D. Pa. June 15, 2004)*. That being the case, and there being no discernable prejudice in severing SCA's claims against Orion, the court will exercise its power to do so. As a result, the court is confronted with a declaratory judgment action by SCA alone, the inverse of which (i.e., an infringement action) was filed about three months earlier in Texas. Therefore, pursuant to the first-filed rule, SCA must be dismissed from this case. *Cf. Triangle Conduit, 125 F.2d at 1009* (holding that this district was under a duty to enjoin a patent-holding defendant in a declara-

2006 U.S. Dist. LEXIS 9834, *

tor/judgment action from pursuing an infringement ac-
tion in another district against the declaratory judgment
plaintiff, even though the infringement action in the other
district would proceed against other parties in the ab-
sence of [*4] the declaratory judgment plaintiff).

With SCA out of the case, the court must still decide
the fate of the non-SCA plaintiffs. Orion first argues that,
like SCA itself, the non-SCA plaintiffs are subject to the
first-filed rule under the holding of *Corixa,* where this
court granted a motion to transfer a patent infringement
action, based on the first-filed rule, to a district where a
previous declaratory judgment action had been filed,
even though one of the plaintiffs in the patent infringe-
ment action was not a defendant in the declaratory judg-
ment action. *2002 U.S. Dist. LEXIS 2980, 2002 WL
265094, at *1-*2.* However, that plaintiff was a licensee
of a defendant in the declaratory judgment action, and
could therefore request permission to join that action
after the transfer. *2002 U.S. Dist. LEXIS 2980, [WL] at
*2.* In this case, the non-SCA plaintiffs cannot be licen-
sees of SCA because SCA is not the patentee. Moreover,
the "accused products" in this action are the websites of
the non-SCA plaintiffs, which are allegedly different
than the SCA website accused in the Texas action. Thus,
*Corixa* is distinguishable, and the first-filed rule does not
apply to the non-SCA plaintiffs.

Orion's next argument is that the action [*5] should
be transferred pursuant to *§ 1404(a).* In *Jumara v. State
Farm Insurance Co.,* the Third Circuit outlined six pri-
vate interests and six public interests relevant to such a
transfer. The private interests are:

> (1) The plaintiff's forum preference as
> manifested in the original choice;
>
> (2) The defendant's preference;
>
> (3) Whether the claim arose elsewhere;
>
> (4) The convenience of the parties as indi-
> cated by their relative physical and finan-
> cial condition;
>
> (5) The convenience of the witnesses --
> but only to the extent that the witnesses
> may actually be unavailable for trial in
> one of the fora; and
>
> (6) The location of books and records
> (similarly limited to the extent that the
> files could not be produced in the alterna-
> tive forum).

*55 F.3d 873, 879 (3d Cir. 1995).* Aside from Orion's
preference for Texas and the non-SCA plaintiffs' prefer-
ences for Delaware, none of the other private interests
are particularly relevant. Orion disagrees, and argues that
convenience weighs in favor of transfer. Although Texas
may indeed be more convenient for Orion, all of the non-
SCA plaintiffs (and Orion) are incorporated in Delaware
- a fact that [*6] certainly weighs against transfer. At
best, then, the private interests are a wash.

The public interests outlined in *Jumara* include:

> (1) The enforceability of the judgment;
>
> (2) Practical considerations that could
> make the trial easy, expeditious, or inex-
> pensive;
>
> (3) The relative administrative difficulty
> in the two fora resulting from court con-
> gestion;
>
> (4) The local interest in deciding local
> controversies at home;
>
> (5) The public policies of the fora; and
>
> (6) The familiarity of the trial judge with
> the applicable state law in diversity cases.

*Id. at 879-80.* Here, Orion argues that although it and the
remaining plaintiffs are all Delaware corporations, the
local interest favors Texas because Orion has offices in
that state. In *Corixa,* three parties were Delaware corpo-
rations, and yet, that fact did not weigh against transfer-
ring the case to California because the "patents dealt with
the treatment of lymphoma, . . . . [which] has far-
reaching implications [beyond Delaware's borders]."
*2002 U.S. Dist. LEXIS 2980 at *12, 2002 WL 265094, at
*4.* By the same token, the fact that Orion has offices in
Texas does not weigh in favor of transfer [*7] where the
patents deal with technology used in internationally-
accessible websites. Orion also argues that because liti-
gation involving the same patents is already underway in
Texas, judicial resources will be saved granting a trans-
fer. Although there may be some efficiency to be gained
by consolidating certain aspects of discovery, Orion ig-
nores the possibility that collateral issues specific to any
one of the many unrelated parties involved in both cases
may create inefficiencies that would not arise if the pro-
ceedings remained separate. *See Codex Corp. v. Milgo
Elec. Corp., 553 F.2d 735, 739 (1st Cir. 1977)* ("Nor are

2006 U.S. Dist. LEXIS 9834, *

we fully convinced of the propriety of using another cus-
tomer suit of another manufacturer, which, incidentally,
may have very different collateral issues, as a magnet to
draw a suit to a jurisdiction where it otherwise should not
be."). Moreover, simply because Orion initiated an action
in Texas involving one set of parties, it should not be
able to "bootstrap itself into staying there" when subse-
quent litigation arises involving a different set of parties.
*Id.*

In short, the *Jumara* interests do not weigh in favor
of transfer, and therefore, [*8] Orion's motion must be
denied as to the non-SCA plaintiffs.

Dated: March 14, 2006

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

IT IS HEREBY ORDERED THAT:

1. Orion's motion to dismiss (D.I. 11) be GRANTED in
part and DENIED in part; and

2. The claims of SCA against Orion be SEVERED and
DISMISSED.

Dated: March 14, 2006

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT D

1 of 100 DOCUMENTS

**CORIXA CORPORATION, a Delaware corporation, et al., Plaintiffs, v. IDEC PHARMACEUTICALS CORPORATION, a Delaware corporation, Defendant.**

**C.A. No. 01-615 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 2980*

**February 25, 2002, Decided**

**DISPOSITION:** [*1] Defendant's motion to transfer action to Southern District of California GRANTED, Matter TRANSFERRED.

**COUNSEL:** For CORIXA CORPORATION, COULTER PHARMACEUTICAL INC., SMITHKLINE BEECHAM CORPORATION, plaintiffs: Thomas C. Grimm, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For IDEC PHARMACEUTICALS CORPORATION, defendant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

MEMORANDUM AND ORDER

I. INTRODUCTION

On September 10, 2001, IDEC Pharmaceutical Corporation ("IDEC") filed a complaint in the Southern District of California against Coulter Pharmaceutical Inc. ("Coulter"), Corixa Corporation ("Corixa"), and the Regents of the University of Michigan ("Michigan"). In its complaint, IDEC seeks a declaratory judgment of noninfringement and/or invalidity of five patents. On September 11, 2001, the Oncologic Drugs Advisory Committee ("ODAC") indicated that it would recommend a limited FDA approval of IDEC's drug Zevalin. On September 12, 2001, at approximately 8:33 A.M. PST, IDEC [*2] filed a first amended complaint which included a sixth patent.

On September 12, 2001, at 12:07 P.M. EST, Corixa, Coulter, and GlaxoSmithKline (GSK) (collectively "Corixa") filed the above-captioned action against IDEC. n1 Corixa alleges that IDEC is infringing U.S. Patent Nos. 6,015,542, ("the 542 patent"), 6,090,365 ("the 365 patent"), and 5,595,721 ("the 721 patent"). These patents are three of the patents involved in the California declaratory judgment action.

n1 On September 28, 2001, Michigan was added as a plaintiff in this action.

Presently before the court is IDEC's motion to stay the proceedings, or alternatively, to dismiss or transfer this action to the Southern District of California. n2 For the reasons that follow, the court will grant IDEC's motion to transfer.

n2 IDEC sought to stay the proceedings pending a ruling from the California court on a motion to dismiss. On January 30, 2002, the California court denied the motion to dismiss. IDEC's current motion to stay is therefore moot.

[*3]

II. BACKGROUND

IDEC is a Delaware corporation with its sole place of business in the San Diego area. Coulter is a Delaware corporation with its principle place of business in the San Francisco Bay area. Corixa is a Delaware corporation based in Seattle, Washington. GSK is a Pennsylvania corporation with its principle place of business in Philadelphia, Pennsylvania. The University of Michigan is a constitutional corporation of the State of Michigan, located in Ann Arbor, Michigan.

2002 U.S. Dist. LEXIS 2980, *

The patents at issue involve technology for the treatment of lymphoma using targeted radioimmunotherapy. Coulter and Michigan are co-owners of the 542, 365, and 721 patents. Corixa and GSK are the licensees of these patents. Both IDEC and Corixa are currently seeking FDA approval for a commercial embodiment of their respective inventions for the treatment of lymphoma using radioimmunotherapy.

With these facts in mind, the court will now turn to the motion presently before it.

III. DISCUSSION

A. The "First-Filed" Rule

Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference [*4] absent special circumstances. *See Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993).* The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id. at 937.* This doctrine applies equally well where the first-filed action is one for a declaratory judgment. *See id. at 938* (noting that, where the declaratory action can resolve the various issues, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.)

Applying the first-filed rule, IDEC argues that the present case should be transferred to the Southern District of California. Notwithstanding that the cases at issue are "mirror image" cases where the court is asked to construe the same patents, Corixa argues that the first-filed rule is inapplicable to the present situation.

Corixa first argues that GSK has not been joined in the California litigation. The record before the court indicates that GSK is Coulter's licensee. It is unclear whether GSK is an exclusive licensee. However, even were the court to accept [*5] Corixa's argument that GSK is an exclusive licensee, that alone does not indicate that GSK is a necessary party to this litigation. Corixa concedes that GSK is a licensee with fewer than all substantial rights. As such, GSK, while likely a proper party to the California lawsuit, is not a necessary party. *See Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333, 1348 (Fed. Cir. 2001)* (holding that an exclusive licensee possessing fewer than all substantial rights may not sue in its own name without joinder of the patent owner.) Finally, to the extent that the parties believe that GSK is a necessary party, GSK may request permission to join the California litigation. n3

n3 Corixa expresses concern over whether the California court has subject-matter jurisdiction over an action between IDEC and GSK. As it is not the court's province to determine another court's subject matter jurisdiction, the court expresses no opinion on this.

Corixa next argues that the [*6] first-filed rule is inapplicable to the present situation because IDEC improperly "raced to the courthouse" in order to file its motion in California. In support of this contention, Corixa points out that its right to file an infringement suit against IDEC did not ripen until after ODAC recommended that the FDA approve Zevalin. However, before ODAC publicly recommended approval, but after IDEC had reason to believe they would do so, IDEC "raced" to file its declaratory judgment action.

The court acknowledges that IDEC's filing seems providential since ODAC's recommendation became public the day after IDEC filed its suit. In its November 6, 2001 Order, however, the California court specifically found that IDEC possessed a reasonable apprehension of suit when it filed its declaratory judgment action. The California court continued by stating that, "an actual controversy existed when IDEC filed the complaint under consideration. Consequently the court finds that IDEC's filing suit was not motivated by "forum shopping alone," but rather was a legitimate exercise of its opportunity under the Declaratory Judgement Act . . . ." This court sees no reason to disagree with the California court's [*7] findings.

Given the information presently before it, the court concludes that having two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank. *See EEOC v University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988).* Accordingly, the court finds that the application of the rule weighs heavily in favor of transferring this case to the Southern District of California.

B. Section 1404(a)

Transfer to the Southern District of California is also mandated under a section 1404(a) analysis. Section 1404(a) provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." *28 U.S.C. § 1404*(a). There is no dispute that this action could have been filed in the Southern District of California. The court will, therefore, move on with inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).*

In *Jumara*, the Third Circuit provided [*8] a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

## 1. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum. n4

> n4 For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197-201 (D. Del. 1998)*. In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District of California is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See 28 U.S.C. § 1404(a).*

[*9]
### a. The Convenience of the Parties

Geographically, California is not more inconvenient for the parties than Delaware. Michigan must travel whether the suit is in California or Delaware. GSK is one of the world's largest pharmaceutical companies, and cannot complain about location. The remainder of the parties are based on the West Coast. Furthermore, transfer to California would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case currently pending in the Southern District of California. Bringing witnesses and relevant documents to only one location, here California, minimizes the level of disruption caused to all parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

### b. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its [*10] own employees for trial. *See Affymeytrix, 28 F. Supp. 2d at 203.* Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

There is no evidence on the record that would indicate that Delaware would be an inconvenient forum for potential non-party witnesses. However, the court notes that all the material witnesses in this dispute, party or otherwise, will be in California already to litigate the related matter now pending in the Southern District of California. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence [*11] that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

### c. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id. at 205.* There is no indication that either party would be unable to produce the relevant records and documents in Delaware. Thus, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in California for the litigation of that case. The court sees no need to require that the parties move the same documents across the country. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra.*

## 2. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role [*12] in the "balance of convenience." *See id. at 205.* The court thus

2002 U.S. Dist. LEXIS 2980, *

elects to discuss only the factors most relevant to the pending case.

a. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by IDEC, and accepted by the court, in Section III.A, *supra*. As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

b. Delaware's Interest in this Controversy

Three of the parties in this action are Delaware corporations. However, while the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the patents as a local controversy unique to Delaware. *See Affymetrix, 28 F. Supp. 2d at 207.* Instead, the patents deal with the treatment of lymphoma. This clearly has far-reaching implications. Accordingly, this factor does not weigh against transferring this case to California.

c. Collective Travel Time and Cost

A mirror image action is currently pending in California. Thus, to require the parties [*13] to simultaneously litigate virtually the same case on different coasts

would certainly increase the collective travel time and cost. Thus, this factor weighs in favor of transfer.

IV. CONCLUSION

The court concludes that the "balance of convenience" tips strongly in favor of transferring this action to the Southern District of California.

For these reasons, IT IS HEREBY ORDERED that:

1. IDEC's alternative motion to transfer this action to the Southern District of California (D.I. 8) is GRANTED.

2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of California.

Dated: February 25, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT E

1 of 100 DOCUMENTS

**ZOETICS, INC. and ZOEMAIL, LLC, Plaintiffs, v. YAHOO!, INC., Defendant.**

**Civil Action No. 06-108-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 46910*

**July 6, 2006, Decided**

COUNSEL: [*1] Josy W. Ingersoll, Esquire, Karen L. Pascale, Esquire, and Elena C. Norman, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware. Of Counsel: Paul K. Vickrey, Esquire, Douglas M. Hall, Esquire, and Frederick C. Laney, Esquire, of NIRO, SCAVONE, HALLER & NIRO, Chicago, Illinois, for Plaintiff.

Mary B. Graham, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware. Of Counsel: Michael A. Jacobs, Esquire, of MORRISON & FOERSTER LLP, San Francisco, California. Matthew M. D'Amore, Esquire, and Kyle W.K. Mooney, Esquire, of MORRISON & FOERSTER LLP, New York, New York, for Defendants.

For Zoemail LLC, Plaintiff: Karen L. Pascale, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE.

JUDGES: Joseph J. Farnan Jr., District Judge.

OPINIONBY: Joseph J. Farnan Jr.

OPINION:

### MEMORANDUM OPINION

July 6, 2006
Wilmington, Delaware

Joseph J. Farnan Jr.
**Farnan, District Judge.**

Pending before the Court is Defendant's Motion To Stay Action And Transfer Action To The Southern District Of New York. (D.I. 10.) For the reasons set forth below, the Court will deny the Motion.

### BACKGROUND

Plaintiffs ZoEmail, a Delaware limited liability company, and [*2] Zoetics, a New York corporation, filed this action seeking damages, attorneys' fees, and injunctive relief from Defendant, a Delaware corporation, for its alleged infringement of two patents Plaintiffs recently purchased from AT&T, Inc. (D.I. 1.) On October 20, 2004, sixteen months before filing its Complaint, Zoetics filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. According to Defendant, Zoetics' resort to bankruptcy was spurred at least partially by its inability to pay AT&T for the patents it purchased. (D.I. 11 at 5.) In Bankruptcy Court, Zoetics announced its intention to emerge from bankruptcy by "realizing value from its Intellectual Property" by first "seeking a license with certain significant parties which have infringed upon its intellectual property" and thereafter retaining counsel to sue for infringement. (D.I. 13, Ex. 8 at 2-3.) According to Defendant, it is one of the "significant parties" to which Zoetics was referring. (D.I. 11 at 7.)

AT&T has filed a secured claim against Zoetics in Bankruptcy Court based on a purported security interest it retained in the Patents-in-Suit. Plaintiffs dispute the validity [*3] of AT&T's secured claim. (D.I. 16 at 4-5.) Meanwhile, the Bankruptcy Court has granted Zoetics leave to retain counsel to pursue its intellectual property claims. (D.I. 13, Ex. 10 at 4.)

### DISCUSSION

#### I. Motion to Stay Action

Defendant contends that the Court should stay this action until the ownership of the Patents-in-Suit is resolved in the New York Bankruptcy Court because it will simplify the issues before this Court, it will not unduly prejudice Plaintiffs, and this proceeding is still at an early stage. Plaintiffs respond that no litigation regarding the ownership of the Patents-in-Suit is pending in the New York Bankruptcy Court, and that they would be prejudiced by a stay at this time. Because there is no indication that the issue of patent ownership will be imminently resolved in the Bankruptcy Court and because

2006 U.S. Dist. LEXIS 46910, *

granting a stay will prejudice Plaintiffs, the Court will deny Defendant's Motion to Stay.

### A. Legal Standard

A Court has the "inherent power to conserve judicial resources by controlling its own docket," *Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985)*, and the decision to stay a case is firmly within [*4] the discretion of the Court. Pegasus Development Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, at *3 (D. Del. May 14, 2003). In ruling on a motion to stay, courts are guided by three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." 2003 U.S. Dist. LEXIS 8052, at *3-4 (quoting *Xerox Corp. v. 3Com Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999)*)f.

### B. Analysis

Defendant is arguing for a stay pending a decision regarding ownership of the Patents-in-Suit by the Bankruptcy Court. Defendant bases its argument on a claim filed by AT&T, an alleged secured creditor of Zoetics. Leaving aside the fact that Plaintiffs dispute the validity of the secured claim (D.I. 16 at 4-5), Defendant has not pointed to any precedent granting a stay under such circumstances. Furthermore, there is nothing to indicate when the Bankruptcy Court will take up the issue of ownership, or even if it plans to do so at all. In fact, the Bankruptcy Court has allowed Zoetics [*5] to retain special intellectual property counsel to "prosecut[e] enforcement actions regarding the Intellectual Property Rights" (D.I. 13, Ex. 9 at 2), though Zoetics ultimately made plain its intention to recover on its intellectual property as part of its emergence strategy. (D.I. 13, Ex. 8 at 2.)

Defendant contends that granting a stay in this case will advance the objective of judicial economy (D.I. 11 at 10) without prejudicing Plaintiffs. ( Id. at 12.) The Court disagrees. Staying the action pending a non-parallel proceeding in which the issue in question may be addressed n1 leaves too much uncertainty to substantially advance judicial economy. The Bankruptcy Court has not evidenced an intention to take up the patent ownership issue; rather, it permitted Zoetics to retain patent counsel in order to pursue its claims.

n1 Defendant repeatedly insists that the issue of patent ownership will be addressed by the Bankruptcy Court (D.I. 20 at 3) but can offer no support for that assertion except to say that Zoetics defaulted on its payment to AT&T and the lat-

ter has filed a secured claim in the Bankruptcy Proceeding. (Id.) All of the case law Defendant cites, on the other hand, involves pending proceedings that are either parallel, *Summa Four, 994 F.Supp. 575 at 581*, or directly related to the issue in dispute. *Landis v. N. Am. Co., 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1966); Commissariat a L'Energie Atomique v. Dell Computer Corp., 2004 U.S. Dist. LEXIS 9107, 2004 WL 1554382 (D. Del. May 13, 2004)*.

[*6]

A secured claim in a bankruptcy proceeding, furthermore, is not tantamount to a challenge to Zoetics' patent ownership. Zoetics has announced its intention to sue on its patents to emerge from bankruptcy (D.I. 13, Ex. 8 at 2), and the Bankruptcy Court has not objected. It is therefore conceivable that, even if AT&T has a genuine secured claim, Zoetics could win a patent infringement suit, pay AT&T from the proceeds, and retain the patents. Granting a stay pending the resolution of the bankruptcy proceedings would prejudice Zoetics by preventing it from carrying its reorganization plan to completion in a timely fashion.

The Court concludes that granting a stay would not simplify the issues in this case with such certainty as to substantially advance judicial economy, and that it would prejudice and disadvantage Plaintiffs. Because neither of these factors weighs in favor of granting a stay, the Court is not persuaded that a stay is warranted because the case is still at an early stage. Accordingly, the Court will deny Defendant's Motion to Stay Action.

## II. Motion to Transfer Action

Defendant argues that substantial practical considerations, as well as other private and [*7] public factors, strongly favor transferring the action to the Southern District of New York. Plaintiffs contend that Defendant has not met its burden of clearly showing that transfer is appropriate. Because the Court agrees with Plaintiffs that the factors do not weigh heavily in favor of transfer, it will deny Defendant's Motion to Transfer.

### A. Standard of Law

28 U.S.C. § 1404 (a) permits a court to transfer a case to any other district where it might have been brought n2 "for the convenience of parties and witnesses" or "in the interest of justice." The purpose of the statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 316 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)*. In considering a § 1404 (a) transfer, the Court must balance a number of private and public

interests. *Reyno v. Piper Aircraft Co., 630 F.2d 149, 159 (3d Cir. 1980).* The relevant private interests are:

> (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the [*8] expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

*Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995).* The relevant public interests are:

> (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of the trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

*Id.* When ruling on a motion to transfer, a court must "balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed." Stratos Lightwave, Inc. v. E20 Communications, Inc., 2002 U.S. Dist. LEXIS 5653, at *5 (D. Del. Mar. 26, 2002). The moving party has the burden to establish that "the balance of interests [*9] strongly weighs in favor of the transfer," and the transfer will be denied if the factors balance evenly or weigh only slightly in favor. Id.

> n2 It is undisputed that this action could have been brought in the Southern District of New York. (D.I. 11 at 13.)

B. Practical Considerations

Defendant first contends that the public interests of practical considerations and judicial efficiency strongly favor transfer because the District Court for the Southern District of New York will be "better positioned to manage the case if and when it is appropriate to proceed." (D.I. 11 at 15.) Defendant also argues that judicial effi-

ciency militates for transfer because Defendant may have to ask the Bankruptcy Court to lift the automatic litigation stay to allow it to pursue counterclaims or file for reexamination of the Patents-in-Suit, a decision that would be reviewed by the District Court for the Southern District of New York. (Id. at 15-16.) Finally, Defendant argues that the transferee court would be better [*10] positioned to adjudicate any standing disputes with regard to ownership of the patents, since it would have already heard any related appeals from the Bankruptcy Court. (Id. at 16.)

The Court concludes that these considerations do not weigh strongly in favor of transfer. As an initial matter, many of Defendant's arguments rely on the proposition that the issue of patent ownership will be imminently resolved by the Bankruptcy Court, which the Court concluded, supra, is not the case. Moreover, while this Court has previously transferred an action to a district where a Chapter 11 case was pending, it did so in large part because the case depended on the interpretation of orders already issued by the transferee judge, and because the case involved administrative claims inextricably intertwined with the bankruptcy proceeding. Bank of America, N.A. v. US Airways, Inc., 2005 U.S. Dist. LEXIS 34902, at *8-9 (D. Del. Dec. 21, 2005).

In this case, there are no existing rulings by Defendant's proposed transferee court that are necessary to resolve the issues. Nor are the details of Zoetics' reorganization plan currently relevant, since the plan has not been filed yet. [*11] (See D.I. 11 at 12.) Ownership of the patents-in-suit has not been challenged in the New York courts, and there is no parallel litigation already in progress. Most importantly, the bankruptcy proceeding is before the Bankruptcy Court, not the District Court, and were a transfer to be granted, the patent infringement case would not be heard by the judge who will be overseeing Zoetics' Chapter 11 case. Defendant attempts to avoid this problem by insisting that judicial efficiency would be advanced because the District Court "would have already heard any related appeals" (Id. at 16), but such speculation does not weigh strongly in favor of transfer. Defendant's argument that Defendant will need to petition the Bankruptcy Court to lift or modify the automatic litigation stay in order to file counterclaims or auxiliary claims runs into the same problem, and the argument that the District Court in the Southern District of New York would hear those appeals is again unpersuasive.

While it may have been marginally more expedient for this case to have been brought in the Southern District of New York, the considerations presented by Defendant do not militate in favor of transfer so [*12] as to outweigh Plaintiffs' choice of forum. Simply put, the Court can find no compelling reason why the District of

Delaware is not an appropriate venue to resolve the issue of patent ownership. In fact, a resolution of the ownership dispute in this Court could as easily assist the Bankruptcy Court in carrying out its function.

### C. Convenience and Availability of Non-Party Witnesses

Defendant argues that the convenience of non-party witnesses weighs strongly in favor of transfer. "Convenience of the expected trial witnesses is the most important factor to consider when determining whether or not transfer is appropriate." *Memminger v. Infocure Corp.,* 2000 U.S. Dist. LEXIS 22077 at *12-13 (D. Del. Nov. 14, 2000). Though the convenience of the non-party witnesses is only an issue to the extent that the witnesses "may actually be unavailable for trial," *Mentor Graphics Corp. v. Quickturn Design Sys., 77 F. Supp. 2d 505, 510 (D. Del. 1999),* "it is sufficient for purposes of venue transfer analysis if the witness is not subject to a Court's subpoena power." Nilssen v. OSRAM Sylvania, Inc., 2001 U.S. Dist. LEXIS 25570, at *8 (D. Del. [*13] May 1, 2001); see also Anic v. DVI Fin Servs., 2004 U.S. Dist. LEXIS 11562, at *8 (D. Del. June 23, 2004). The Court has the power to subpoena a witness who can be served within its district, or at a place within 100 miles of the courthouse. *Fed. R. Civ. P. 45(b)(2).*

Most of the witnesses whose convenience Defendant claims strongly favors transfer are located in AT&T's Florham Park, New Jersey facility or in Berkeley Heights, New Jersey. (D.I. 11 at 18-20.) However, Defendant admits that both of these locations are within 100 miles of Wilmington, Delaware using a straight-line measurement. (Id. at 19.) Defendant argues that their presence still militates in favor of transfer because using an "ordinary and usual travel route" measurement puts them outside of the Court's subpoena power while they would be within the subpoena power of the transferee court by any measure. (Id.) Thus, transferring would "avoid later disputes." (Id. at 21.) There is, however, no genuine dispute that Delaware courts apply the modern approach, which measures "distance by a straight line on a map," as this method is the better construction of *Rule 45* and is easier to apply [*14] in practice. *Hill v. Equitable Bank, Nat'l Ass'n, 115 F.R.D. 184, 186 (D. Del. 1987).* By contrast, the cases cited by Defendant in favor of the "ordinary and usual travel route" approach are more than 50 years old and are from district courts outside of Delaware. (D.I. 11 at 20.) Thus, the Court concludes that these witnesses are within the subpoena power of the Court and considered available to testify for the purposes of venue transfer.

Defendant also asserts that two of the attorneys involved in prosecuting the Patents-in-Suit are outside the subpoena power of this Court, but within the subpoena power of the New York court, weighing heavily in favor of transfer. Defendant claims that these witnesses would testify to issues of claim construction and the validity and enforceability of the Patents-in-Suit.

In response, Plaintiffs argue that Defendant has not shown with sufficient specificity why the witnesses' testimony would be necessary, and that Defendant has not shown that either would be reluctant to travel to Delaware in order to testify. As to the first argument, the Court concludes that Defendant may have its reasons for calling the prosecuting attorneys, [*15] given the attorneys' first-hand involvement in prosecuting the patents and their knowledge thereof. (See D.I. 13, Ex. 17 and 18.) As to the second, Defendant bears no burden to show that the witnesses it plans to subpoena would be "reluctant" to testify. "It is sufficient... [that] the witness is not subject to a Court's subpoena power." Nilssen, 2001 U.S. Dist. LEXIS 25570, at *8. Thus, the Court concludes that the convenience of the prosecuting attorneys is a factor weighing in favor of transfer.

### D. Convenience of the Parties

Defendant argues that because Plaintiffs' principal place of business is mere blocks away from the District Court for the Southern District of New York, the convenience of the parties weighs in favor of transfer. However, "a plaintiff's choice of forum is a paramount consideration not to be lightly disturbed." *Mentor Graphics, 77 F. Supp. 2d. at 509.* Furthermore, while the plaintiff's choice of forum is generally given less deference where the plaintiff has not chosen its home turf, a defendant's incorporation in the chosen forum is "a rational and legitimate reason for choosing the forum" that cannot be disregarded. [*16] Stratos, 2002 U.S. Dist. LEXIS 5653, at *6-7. Having incorporated in the forum state, the defendant "should not now complain that another corporation has chosen to sue it here." 2002 U.S. Dist. LEXIS 5653 at *7.

Defendant in this case is incorporated in Delaware and admits that "neither Delaware nor the Southern District of New York is significantly more convenient than the other" for itself. (D.I. 11 at 24). Thus, the convenience of Defendant is not a factor weighing in either direction. As for the convenience of Plaintiffs, they have chosen the forum of Defendant's incorporation - a "rational and legitimate" choice that is entitled to deference. Stratos, 2002 U.S. Dist. LEXIS 5653, at *7. The Court concludes that the convenience of the parties does not weigh in favor of transfer.

### E. Local Interest in the Controversy

Finally, Defendant argues that because Zoetics is in bankruptcy in the Southern District of New York, the local interest in the controversy weighs in favor of trans-

fer. However, as discussed supra, the bankruptcy proceeding and the patent infringement suit are neither identical nor parallel controversies. Further, as Defendant acknowledges, "[p]atent [*17] rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy." Stratos, 2002 U.S. Dist. LEXIS 5653 at *8; see also Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc., 2005 U.S. Dist. LEXIS 2825, at *8 (D. Del. Feb. 15, 2005). Therefore, the Court concludes that the Southern District of New York does not have a local interest in the controversy.

F. Conclusion

Although "[c]onvenience of the expected trial witnesses is the most important factor to consider when determining whether or not transfer is appropriate," Memminger, 2000 U.S. Dist. LEXIS 22077 at *12-13, the Court concludes that the potential unavailability of the attorneys who prosecuted the patent - the sole factor weighing in favor of transfer - is insufficient to overcome the "paramount" consideration of Plaintiffs' choice of forum. *Mentor Graphics, 77 F. Supp. 2d. at 509*. Plaintiffs had a legitimate reason for choosing to sue in Delaware, and Defendant has not carried its burden of negating that choice. Accordingly, the Court will deny Defendant's Motion to Transfer Action to the District [*18] Court for the Southern District of New York.

# EXHIBIT F

8 of 100 DOCUMENTS

PEGASUS DEVELOPMENT CORPORATION and PERSONALIZED MEDIA
COMMUNICATIONS, L.L.C., Plaintiffs v. DIRECTV, INC., HUGHES
ELECTRONICS CORPORATION, THOMPSON CONSUMER ELECTRONICS,
INC., and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, De-
fendants. AND RELATED COUNTERCLAIMS

Civil Action No. 00-1020-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2003 U.S. Dist. LEXIS 8052*

**May 14, 2003, Decided**

**SUBSEQUENT HISTORY:** As Amended September 4, 2003.

**PRIOR HISTORY:** *Pegasus Dev. Corp. v. Directv, Inc., 2002 U.S. Dist. LEXIS 6825 (D. Del., Apr. 18, 2002)*

**DISPOSITION:** [*1] Defendants' motion to stay pending patent reexamination granted. Plaintiffs' motion for leave to assert claim patent denied. Motions to dismiss denied.

**COUNSEL:** For Pegasus Development Corporation, Personalized Media Communications LLC, PLAINTIFFS: Rudolf E Hutz, Rudolf E Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Directv Inc, Hughes Electronics Corporation, Thomson Consumer Electronics Inc, Thomson Multimedia, Inc, DEFENDANTS: Donald F Parsons, Jr, Mona A Lee, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Thomson Consumer Electronics Inc, DEFENDANT: Karen Jacobs Louden, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Philips Electronics North America Corporation, DEFENDANT: Steven J Balick, Steven T Margolin, Ashby & Geddes, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION** [*2]

On December 4, 2000, Pegasus Development Corporation ("Pegasus") and Personalized Media Communications, L.L.C. ("PMC") filed a complaint against several defendants, alleging infringement of six patents, including *U.S. Patent Nos. 4,965,825* ("the '825 patent") and 5,335,277 ("the '277 patent"). Since that time, the original scheduling order has been revised several times. Currently, fact discovery is scheduled to close on August 22, 2003, and a trial is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003, respectively, the defendant Thomson Consumer Electronics, Inc. ("Thomson") filed with the Patent and Trademark Office ("PTO") a request for *ex parte* reexaminations of the '825 and '277 patents. The request for reexamination of the *'825 patent* was granted on April 10, 2003. n1 Presently before the court is a joint motion by the defendants to stay the litigation pending the completion of the patent reexaminations (D.I. 459). After careful consideration of the parties' submissions, and for the reasons detailed below, the court will grant the motion.

--------

n1 The court is not yet aware of a decision by the PTO regarding reexamination of the '277 patent.

--------

[*3]

**II. DISCUSSION**

2003 U.S. Dist. LEXIS 8052, *

The decision to stay a case is firmly within the discretion of the court. *Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985)*. This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citation omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg., 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q. 2d 1889, 1890 (N.D. Ill. 1987)* ("In passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)* (citing legislative history of reexamination statute). In determining whether a stay is appropriate, the court is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving [*4] party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp v. 3Comm Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999)* (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D. Del. 1991)* (stating a similar test).

In this case, there are two plaintiffs, four defendants, and several counter claimants, as well as six patents comprising dozens of claims. In addition, the written submissions in this case have been particularly voluminous; the briefing on claim construction alone, for example, constitutes 576 pages. *See Report and Recommendation of Special Master Regarding Claim Construction* at 2 (citing "copious briefing"). In these ways, the present suit is quite complex, although, perhaps, not extraordinarily so. The greater context of this suit is extraordinary, however: the plaintiffs have filed more than 300 related patent applications based upon an original patent application filed in 1981 and supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed [*5] by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of patent text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

The reexamination process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the

court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc., 1997 U.S. Dist. LEXIS 2372, 1997 WL 94237, at *9 (D. Kan. 1997); Hamilton Indus., Inc. v. Midwest Folding Products Mfg., 1990 U.S. Dist. LEXIS 3138, 1990 WL 37642, at *1-2 (N.D. Ill. 1990)*. Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the [*6] complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pretrial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley,* [*7] *213 U.S.P.Q.290,290 (W.D.Okla. 1982)* ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc., 2000 U.S. Dist. LEXIS 4254, 2000 WL 1134471, at *3 (S.D.N.Y. 2000)* ("The grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," *35 U.S.C. 305,* the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, [*8] the court reminds the

2003 U.S. Dist. LEXIS 8052, *

plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 961 (Fed. Cir. 1986)* (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1139 (Fed. Cir. 1985)).* In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

Objecting to a stay, the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior [*9] art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I. 488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I. 460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("It appears that PMC sought to 'overwhelm' the PTO and the Courts.").

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the *'825 patent* comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications [*10] of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the *'825 patent* necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to

Defs.' Joint Brief in Support of Motion to Stay (D.I. 467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

**III. CONCLUSION**

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that: [*11]

1. The defendants' Motion to Stay Pending Reexamination by the U.S. Patent and Trademark Office (D.I. 459) is GRANTED. The proceedings are stayed from the date of this order until further notice.

2. The parties shall advise the court of any decision that results from the PTO's reexamination of the *'825 patent*, and any other decision of the PTO regarding reexamination of any of the other patents-in-suit.

3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I. 399) is DENIED without prejudice.

4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I. 376) is DENIED without prejudice.

5. Phillips' Motion to Dismiss for Lack of Standing (D.I. 396) is DENIED without prejudice.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Date: May 14, 2003

# EXHIBIT G

1 of 100 DOCUMENTS

**STRATOS LIGHTWAVE, INC., Plaintiff/Counterclaim Defendant, v. E2O COMMUNICATIONS, INC., Defendant/Counterclaim Plaintiff.**

**Civil Action No. 01-309-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 5653*

**March 26, 2002, Decided
March 26, 2002, Filed**

**DISPOSITION:** [*1] Motion to transfer venue to Central District Of California denied.

**COUNSEL:** Attorneys for the plaintiff, Stratos Lightwave, Inc.: Joseph N. Hosteny, III, Arthur A. Gasey, Paul C. Gibbons, Niro, Scavone, Haller & Niro, Chicago, Illinois. Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

Attorneys for the defendant, E2O Communications, Inc.: David P. Enziminger, Brett J. Williamson, David E. Lederman, O'Melveny & Meyers LLP, Los Angeles, California. William J. Wade, Richards, Layton & Finger, Wilmington, Delaware.

**JUDGES:** Joseph J. Farnan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Joseph J. Farnan

**OPINION:**

### MEMORANDUM ORDER

Presently before the court is a Motion To Transfer Venue To The Central District of California (D.I. 11) filed by Defendant E2O Communications, Inc. ("E2O"). For the reasons discussed, the motion will be denied.

### BACKGROUND

Stratos Lightwave, Inc. ("Stratos") and E2O both manufacture and sell optoelectronic transciever modules which are used in computer networks. (D.I. 8 at 1). Stratos is a Delaware corporation with its headquarters in Chicago, Illinois and facilities in California. (D.I. 17 at 1). E2O is also incorporated [*2] in Delaware, but maintains its headquarters in Calabasas, California. (D.I. 8 at 2). The design and development of E2O's accused products is conducted in Californla, where the majority of E2O's domestic employees are located. (D.I. 8 at 2). The accused products are manufactured internationally, in Asia. (D.I. 8 at 2).

On May 5, 2001, Stratos filed this action against E2O alleging infringement of U.S. Patent Nos. 5,717,533, 5,734,558, 5,864,468, 5,879,173, Re. 36,820, 6,201,704B1, and 6,320,878BI. (D.I. 1). E2O subsequently filed the instant motion to transfer.

### DISCUSSION

By its motion, E2O contends that Delaware is an inconvenient forum because its corporate offices, where all the relevant documents and knowledgeable fact witnesses are located, are in California. (D.I. 8 at 7). E2O contends that litigation in Delaware would be not only expensive, but disruptive to the corporation. (D.I. 8 at 7). E2O further contends that Delaware is an inconvenient forum for the witnesses, none of whom reside in Delaware, and further that several non-party witnesses exist who would be beyond the Court's subpoena power. (D.I. 8 at 8). Additionally, E2O contends that the Central District of [*3] California is more convenient because the median time to trial is faster. (D.I. 8 at 11). Finally, E2O contends that California, not Delaware, has a local interest in deciding this controversy because the majority of the allegedly infringing activity took place in California. (D.I. 8 at 11). n1

n1 E2O continuously argues that Stratos' contacts with Delaware are "de minimis, at best;" however, the Court finds this argument to be immaterial in the context of a motion to transfer.

In opposition, Stratos contends that its choice of forum is entitled to substantial deference. (D.I. 17 at 4). Stratos contends that although Delaware is not its home turf, it chose to sue E2O in Delaware because E2O is

2002 U.S. Dist. LEXIS 5653, *

incorporated in this state. (D.I. 17 at 5). Stratos further contends that E2O, a successful international company, is capable of financing litigation in Delaware, and transferring this action to California would merely shift the burden of expense to Stratos. (D.I. 17 at 7). By E2O's failure to identify non-party witnesses [*4] beyond subpoena power, Stratos contends that the convenience of the witnesses does not weigh in favor of transfer. (D.I. 17 at 11-10). Stratos further contends that adjudication of this action, pursuant to the Court's Scheduling Order (D.I. 15), will be faster than in California, where a new scheduling order would be put in place. (D.I. 17 at 12).

Transfer of a civil action is governed by *28 U.S.C. § 1404*(a) which provides, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)* (internal citations omitted). Because it is undisputed that Stratos could have brought the instant action in the Central District of California, the Court's only task is to determine whether the factors enumerated in § 1404(a) and by the United States Court of Appeals for the Third [*5] Circuit, warrant a transfer.

The Third Circuit has instructed that when reviewing a motion to transfer under *28 U.S.C. § 1404*(a) district courts must consider, among other things, private n2 and public n3 interests. See *Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995).* When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Id. at 883; see also Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1920).* The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See *Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).*

n2 The private interests are:

(1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial conditions, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

*Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995).*

[*6]

n3 The public interests are:

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

Id.

## I. Private Interests

After a consideration of the relevant private interests, the Court concludes that the balance of these factors does not weigh strongly in favor of transfer. As stated previously, plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Shutte, 431 F.2d at 25.* In the instant case, stratos' preference for Delaware is not given as much deference because it, admittedly, has not chosen its home turf. See *Continental, 61 F. Supp. 2d at 131* (stating that "the transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen [*7] its home turf or a forum where the alleged wrongful activity occurred"). However, it is not appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum. See *Joint Stock Society v. Heublein, Inc., 936 F.Supp 177, 187 (D. Del. 1996).* And the fact that E2O has incorpo-

2002 U.S. Dist. LEXIS 5653, *

rated in Delaware is a rational and legitimate reason for choosing to sue E2O in Delaware. In fact, E2O, having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 965 (D. Del. 1993).* Therefore, Stratos' forum preference, as well as E2O's Delaware incorporation, weigh in favor of maintaining this action in Delaware.

The Court cannot conclude that the balance of the remaining factors strongly weigh in favor of transfer. No witness, reluctant to testify, beyond the subpoena power of the Court, has been identified. The relevant documents, books, and records can be easily transported to Delaware. The financial burden on Defendants to litigate in Delaware is not unduly harsh. In sum, [*8] the private interests weigh in favor of maintaining this action in Delaware.

**II. Public Interests**

In the Court's view, none of the public interests weigh in favor of transfer. Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy. Similarly, because this is a patent infringement action, the familiarity of the trial judge with the application of state law is not applicable. Further, in light of the Scheduling Order already in place, the Court is not persuaded that this case would be adjudicated faster in the Central District of California. Finally, as discussed above, the Court concludes that Delaware is not an unduly inconvenient forum for E2O to litigate this action. Accordingly, the motion to transfer will be denied. n4

n4 The Court is aware of *Methode Electronics & Stratos Lightwave, Inc. v. Finisar, 205 F.R.D. 552 (N.D.Ca. 2001)* (the "Methode Case"), and its resolution. It is the Court's view that the Methode Case is irrelevant to the instant case, and the presence or absence of that action is not material to the Court's decision to retain jurisdiction over the instant case.

[*9]

NOW THEREFORE IT IS HEREBY ORDERED this 26 day of March 2002 that E2O's Motion To Transfer Venue To The Central District Of California (D.I. 11) is **DENIED**.

Joseph J. Farnan

UNITED STATES DISTRICT JUDGE

# EXHIBIT H

2 of 100 DOCUMENTS

CASHEDGE, INC., Plaintiff, v. YODLEE, INC., Defendant.

Civil Action No. 06-170-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2006 U.S. Dist. LEXIS 50488*

**July 19, 2006, Decided**

**COUNSEL:** [*1] Arthur G. Connolly, III, Esquire, of CONNOLLY BOVE LODGE & HUTZ LLP, Wilmington, Delaware, Of Counsel: Drew M. Wintringham, III, Esquire, and Mark W. Rueh, Esquire, of CLIFFORD CHANCE ROGERS & WELLS LLP, New York City, New York, Attorneys for Plaintiff.

William J. Marsden, Jr., Esquire, and Kyle Wagner Compton, Esquire, of FISH & RICHARDSON, P.C., Wilmington, Delaware, Of Counsel: David M. Barken, Esquire, and Craig R. Compton, Esquire, of FISH & RICHARDSON, P.C., Redwood City, California, Attorneys for Defendant.

**JUDGES:** Joseph J. Farnan, Jr., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Joseph J. Farnan, Jr.

**OPINION:**

### MEMORANDUM OPINION

**Farnan, District Judge.**

Pending before the Court is Defendant's Motion To Transfer (D.I. 12). For the reasons discussed, the Motion will be granted.

### I. BACKGROUND

Plaintiff was issued United States Patent No. 7,013,310 ("the '310 patent"), entitled "Method And Apparatus For Retrieving And Processing Data" on March 14, 2006. That same day, Plaintiff filed its Complaint in this Court, alleging infringement of the '310 patent. (D.I. 1). Defendant filed its Answer and Counterclaim on April 4, 2006, and stated its intent to file a motion [*2] to transfer. (D.I. 5). On May 4, 2006, Defendant filed its Motion to Transfer. (D.I. 12).

Defendant's Motion to Transfer is based on a pending action in the Northern District of California, Case No. C-05-1550-SI. On April 14, 2005, Defendant filed a patent infringement action in the Northern District of California, alleging that Plaintiff infringed several of its U.S. Patents. In response, Plaintiff filed an action in the same court, seeking a declaratory judgment of noninfringement, invalidity, and unenforceability of the patents asserted in Defendant's case and additional patents. Those two actions were consolidated into one nine-patent case ("the California action"). The California court conducted a Markman hearing on April 26, 2006.

### II. PARTIES' CONTENTIONS

By its Motion, Defendant contends that, pursuant to 28 U.S.C. § 1404(a), the Court should transfer this action to the Northern District of California. In support of this contention, Defendant argues that Plaintiff's allegations of infringement of the '310 patent are related to the allegations in the California action. Further, Defendant contends that certain patents in the California action [*3] are prior art to Plaintiff's '310 patent and form the basis of Defendant's inequitable conduct defense. n1 In response, Plaintiff contends that the Court should deny the Motion because Plaintiff chose Delaware, the California action is unrelated, and judicial economy would not be served by transfer.

> n1 Defendant alleges that, at a minimum, United States Patent Nos. 6,317,783 ("the '783 patent"), 6,199,077 ("the '077 patent"), and 6,412,073 ("the '073 patent") are material prior art to Plaintiff's '310 patent. (D.I. 5 at P 23).

### III. DISCUSSION

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

2006 U.S. Dist. LEXIS 50488, *

district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiff could have brought the instant action in the Northern District of California, the Court's only task is to determine whether the factors [*4] enumerated in Section 1404(a) warrant a transfer under the circumstances.

The Third Circuit has set forth a list of factors for district courts to consider when deciding whether or not to transfer venue. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995). These factors include six private interests: (1) the plaintiff's forum preference as evidenced by his or her original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial condition, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (6) the location of books and records, to the extent that the books and records could not be produced in a certain forum. Id. at 879. The factors also include six public interests for courts to consider: (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home [*5] forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases. Id. at 879-80. District courts must balance all of the relevant factors and determine whether a transfer of venue would best serve all the aforementioned interests. Id. at 883. The burden is on the movant to establish that the balance of the interests weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. Continental Cas. Co. v. Am. Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).

## A. PRIVATE INTERESTS

Although the plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed, Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1920), when the plaintiff lacks a rational and legitimate reason to litigate in the forum, the transfer of a case to a more appropriate forum is less inconvenient. Brunswick Corp. v. Precor Inc., 2000 U.S. Dist. LEXIS 22222, at *7 (D. Del. Dec. 12, 2000); See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F. Supp. 759, 764 (D. Del. 1991). [*6] A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. Stratos Lightwave, Inc. v. E2O Communs., Inc., 2002 U.S. Dist. LEXIS 5653, C.A. No. 01-309 JJF, at *7 (D. Del. March 26, 2002). Accordingly, the first factor weighs against transfer, and Defen-

dant must demonstrate that the other Jumara factors strongly favor a transfer to California.

The Court concludes that the other private interest factors weigh in favor of transfer. Here, both parties are Delaware corporations with principal places of business outside Delaware. Plaintiff is headquartered in New York City, and Defendant is headquartered in Redwood City, California. Both parties maintain offices in the Northern District of California. Also, there are likely witnesses, such as former employees, that still reside in the Northern District of California. The location of books and records is neutral as neither party has argued that it would be unable to produce documents in either forum.

Importantly, the same parties are currently litigating in the Northern District of California. Although the Court understands that the California [*7] action and this action are different, n2 the technologies at issue all relate to data extraction, retrieval, or presentation through Internet technologies, such as web sites and web pages. The Northern District of California is more convenient for the parties because the parties and potential witnesses are located in that district, the parties have proven capable to litigate there, and the court is already familiar with the parties and their technologies.

> n2 This action requires claim construction of the claim language of the '310 patent, which is not part of the California action. However, Defendant's patents-in-suit in the California action are relevant to its defenses and counterclaim in this action.

## B. PUBLIC INTERESTS

The Court also concludes that the public interest factors weigh in favor of transfer. Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." Brunswick, 2000 U.S. Dist. LEXIS 22222, [*8] at *8. Factors supporting a decision to transfer include whether the litigation in the target forum involves: (1) the same parties, (2) related or similar technologies for the judge to become familiar with, and (3) a common field of prior art.

In this case, judicial efficiency regarding the ease, speed, or expense of trial strongly weigh in favor of transfer. The California action involves the same parties, similar technologies, and related patents-in-suit. The parties in the California action have already conducted a two-hour technology tutorial on April 19, 2006, argued Markman issues in nine patents on April 26, 2006, and commenced discovery on seemingly related products and technologies. Additionally, the Court concludes that pub-

lic interests such as enforceability of the judgment, familiarity with state law in diversity actions, local interests in deciding local controversies, and court congestion are neutral or non-applicable factors in this case. Jumara, 55 F.3d at 879-880. Accordingly, the interests of judicial efficiency and justice are best served by transferring this case to the Northern District of California.

## IV. CONCLUSION

In sum, for the [*9] reasons discussed, the Court concludes that the balance of the private and public interest factors support transferring this case to the Northern District of California where related litigation is pend-

ing. Accordingly, the Court will grant Defendant's Motion To Transfer (D.I. 12).

An appropriate Order will be entered.

ORDER

At Wilmington, the 19 day of July 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Defendant's Motion To Transfer (D.I. 12) is **GRANTED.**

Joseph J. Farnan, Jr.

UNITED STATES DISTRICT JUDGE

# EXHIBIT I

1 of 100 DOCUMENTS

**BRUNSWICK CORPORATION, Plaintiff, v. PRECOR INCORPORATED., Defendant.**

**C.A. No. 00-691-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2000 U.S. Dist. LEXIS 22222*

**December 12, 2000, Decided**
**December 12, 2000, Filed**

**DISPOSITION:** [*1] Precor's motion to transfer granted.

**COUNSEL:** For BRUNSWICK CORPORATION, plaintiff: Robert W. Whetzel, Richards, Layton & Finger, Wilmington, DE.

For PRECOR INCORPORATED, defendant: Samuel David Brickley, II, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

On August 1, 2000, the plaintiff, Brunswick Corporation, and its division Life Fitness ("Life Fitness") brought this patent infringement action against Precor Incorporated ("Precor"). Life Fitness alleges that Precor is infringing its U.S. Patent No. *6,095,951* (" *'951* patent") relating to exercise treadmills. Presently before this court is Precor's motion to transfer this case to the United States District Court for the Western District of Washington, pursuant to *28 U.S.C. § 1404*(a). Because the court finds that a transfer would convenience the parties and the witnesses while serving the interests of justice, Precor's motion to transfer is granted.

## I. BACKGROUND

### A. The parties

Life Fitness and Precor both design, manufacture, [*2] and sell exercise equipment and both directly compete with one another in the exercise fitness market. Although both parties are incorporated in Delaware, neither party maintains a physical presence (e.g., offices or facilities) in this state. Life Fitness has its principal place of business in Franklin Park, Illinois and Precor has its principal place of business in Bothell, Washington.

### B. Prior Litigation Between the Parties

"Life Fitness and Precor are no strangers to each other, nor to patent litigation." D.I. 7, at 2. In 1994, Precor filed a patent infringement suit against Life Fitness in the United States District Court for the Western District of Washington ("1994 litigation"). At issue in the 1994 litigation were . U.S. Patent Nos *5,599,259, 5,752,897* and certain Claims of U.S. Patent No. *5,382,207* (respectively the " *'259, '897,* and *'207* patents"). The *'207* patent is the parent of the *'951* patent currently at issue in the case before the court.

In the 1994 litigation, Claims 1-36 of *'207* patent were dismissed on summary judgment in February 1996 leaving only claims 37, 38, and 39 at issue. In early September 1999, Life Fitness voluntarily stipulated to the dismissal [*3] of the claims for infringement of the *'259* and *'897* patents as well as Claims 38-39 of the *'207* patent. As a result of this stipulation, these claims were dismissed with prejudice in an order dated September 23, 1999. *See Precor Inc. v. Life Fitness*, No. C94-1586C (W.D. Wash. Sept. 23, 1999) (stipulation and order of dismissal). Thus, the only infringement claim remaining for trial related to Claim 37 of the *'207* patent. In October 1999, Life Fitness lost at trial as to this one patent claim. The judgment from the 1994 litigation is currently on appeal to the Federal Circuit.

## II. DISCUSSION

Pursuant to *28 U.S.C. § 1404*(a), the court may transfer this action to "any other district where it might

have been brought" when it appears that a change of venue would "convenience" the parties and the witnesses while serving the "interest of justice." *28 U.S.C. § 1404*(a) (1993). The parties here agree that Life Fitness could have brought this action in the Western District of Washington. *See 28 U.S.C. S 1391*(b)(1) (1993). Moreover, this lawsuit could have initially been filed in Washington because it is a patent [*4] infringement matter. *See 28 U.S.C. § 1400*(b). Therefore, the court will next apply the most relevant public and private factors to the facts of the case as directed by the Third Circuit's decision in *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).*

In *Jumara*, the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. *55 F.3d at 879-80; see also Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 196-97 (D. Del. 1998).* These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *Jumara, 55 F.3d at 879-80.* n1 The court should apply these factors to determine, "on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id. at 883* (citing *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30-31, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)).* [*5] The burden is on moving party to show that balance of convenience and the interests of justice weighs in favor of transfer. *See Jumara, at 879.*

n1 The private interests may include: 1) the plaintiff's original forum preference; 2) the defendant's preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses-- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara, 55 F.3d at 879-880.* The public interests may include: 1) the enforceability of the judgment; 2) practical considerations that make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

[*6]

A. Private Factors

The court concludes that the balance of the private factors tips slightly in favor of transfer. In this case, the court finds the convenience of the parties, the convenience of the witnesses, and the location of records and books to be the most pertinent of the private factors. Although both parties are incorporated in Delaware, Precor maintains its headquarters in the Western District of Washington and Life Fitness in Franklin Park, Illinois. Additionally, neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware.

Recognizing that the balance of convenience tips toward the Western District of Washington, Precor further argues that Life Fitness will suffer no greater inconvenience in traveling to Washington than Delaware. In contrast, Life Fitness argues that its choice of forum is paramount. The court acknowledges that a plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).* In this case, [*7] however, the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and manufacture of the exercise equipment, occurred outside of Delaware. *See Britamco Underwriters, Inc. v. Wallace, 56 F. Supp. 2d 542, 545 (E.D. Pa. 1999).* "The transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen . . . a forum where the alleged wrongful activity occurred." *Continental Casualty Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).* Thus, because the parties are located outside of Delaware, the witnesses as well as the relevant documents and records are located in Washington, and the product at issue was designed and manufactured in Washington, the Western District of Washington is a more convenient forum for the litigation.

B. Public Factors and the Interest of Justice

Although the private factors tip slightly in favor of the Western District of Washington, the relevant public factors weigh heavily in favor of transfer. Most relevant to the courts inquiry is whether there are practical considerations that would make [*8] trial "easy, expeditious, or inexpensive." *Jumara, 55 F.3d at 879.* In this case, there has already been litigation on the '207 patent, a parent patent of the one at issue here, in the Western District of Washington. This matter is on appeal. Moreover, the parties are currently litigating another patent infringement matter involving exercise equipment in the Western District of Washington. n2 Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *See Liggett Group, Inc. v. R.J. Reynolds To-*

Page 3

2000 U.S. Dist. LEXIS 22222, *

*bacco Co., 102 F. Supp. 2d 518,* (D.N.J. 2000) (citations omitted). Thus, the court finds that transferring this case would promote the interests of justice.

        n2 The parties disagree as to whether this is a directly related matter.

**III. CONCLUSION.**

Finding that the balance of convenience and the interests of justice weigh in favor of transfer,

IT IS HEREBY ORDERED that:

1. Precor Incorporated's [*9]  Motion to Transfer is GRANTED; and

2. This matter shall be TRANSFERRED to the Western District of Washington.

Date: December 12, 2000

    Gregory M. Sleet

    UNITED STATES DISTRICT JUDGE