IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TIME WARNER CABLE INC., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-387-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| USA VIDEO TECHNOLOGY CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF TIME WARNER CABLE INC.'S ANSWERING BRIEF IN OPPOSITION
TO USVO'S MOTION TO DISMISS, STAY OR TRANSFER AND REQUEST FOR
INJUNCTION AGAINST DEFENDANT USA VIDEO TECHNOLOGY CORP.
FROM PROCEEDING WITH DUPLICATIVE LITIGATION IN THE
EASTERN DISTRICT OF TEXAS AGAINST TIME WARNER CABLE INC.**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Jeffrey M. Olson
Samuel N. Tiu
Matthew S. Jorgenson
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
(213) 896-6000

Dated:  September 14, 2006

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ........................................................................................ 3

      A.    2000-2001 – USVO Advises TWC And Others Of Possible
            Infringement Of The '792 Patent, But Takes No Action Against
            TWC ................................................................................................. 3

      B.    2003-2006 – USVO Brings And Pursues A Patent Infringement
            Claims Against Movielink In Delaware ...................................... 4

      C.    November 3, 2004 – USVO Admits That The '792 Patent Does
            Not Cover A "Broadcast Environment" Such As Used By TWC .............. 5

      D.    June 13, 2006 – USVO Files A Patent Infringement Claim In
            Texas Against Entities That Provide Video-On-Demand Cable
            Services, But Not Against TWC Until Much Later ................................... 6

      E.    June 15, 2006 – In Delaware, TWC Files For Declaratory Relief
            That The '792 Patent Is Not Infringed, Invalid And Unenforceable
            And USVO Asserts Counterclaims For Patent Infringement
            Against TWC For The First Time And Well Before Such Claims
            Were Made By USVO Against TWC In Texas ......................................... 6

      F.    August 18, 2005 – In Texas, USVO Amends Its Complaint To
            Name TWC As A Defendant ................................................................... 7

III.  ARGUMENT ........................................................................................... 7

      A.    The Present Delaware Case Is The First-Filed Case And Should
            Not Be Stayed Or Dismissed ................................................................ 7

      B.    Even If The Texas Case Were Considered The First-Filed, This
            Case Falls Within The Exceptions To The First-Filed Rule
            Because Delaware Is The Most Convenient And Appropriate
            Forum .................................................................................................. 11

            1.    The location of the parties, witnesses and documents favors
                  Delaware .................................................................................. 13

            2.    Questions about personal jurisdiction make Delaware the
                  preferred forum ....................................................................... 14

3.    Consolidation may not be preferable or feasible in this case, but would be most easily accomplished in Delaware .................. 15

4.    Considerations of judicial economy favor Delaware .................... 17

5.    USVO's choice of the Eastern District of Texas is entitled to no weight as it was motivated purely by forum shopping ......... 19

C.    Transfer Of This Case To Texas Is Not Appropriate ............................... 20

1.    Legal standard .................................................................................... 20

2.    The Jumara factors weigh against transfer ..................................... 21

a.    Private factors ........................................................................ 21

b.    Public factors ......................................................................... 23

D.    As An Additional Factor Against Dismissal, Stay Or Transfer, The Delaware Court's Familiarity With The Subject Of This Litigation Should Lead To A Prompt Resolution Because USVO's Claims Lack Merit ....................................................................................................... 23

1.    TWC does not have a "distribution interface" that "initiates connections" .......................................................................................... 24

2.    The set top boxes in TWC's system do not "store" received programs, but receive programs in real time ................................... 26

3.    TWC transmits programs in real time, not "less than real time" .................................................................................................... 27

4.    TWC delivers VOD over a cable broadcast network, not a switched telephone network ............................................................. 28

E.    USVO Should Be Enjoined From Pursuing Infringement Claims Against TWC in Texas ........................................................................................ 31

IV.    CONCLUSION ..................................................................................................... 32

# TABLE OF AUTHORITIES

Cases                                                                   Page(s)

Advanta Corp. v. Visa U.S.A.
    1997 U.S. Dist. LEXIS 2007 (E.D. Pa. Feb. 19, 1997) .................................... 9

Bergman v. Brainin
    512 F. Supp. 972 (D. Del. 1981).................................................................... 20

Capitol Records Inc. v. Optical Recording Corp.
    810 F. Supp. 1350 (S.D.N.Y. 1992)......................................................... 12, 17

Cosden Oil & Chemical Co. v. Foster Grant Co.
    432 F. Supp. 956 (D. Del. 1977)................................................................... 31

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.
    344 F.3d 1359 (Fed. Cir. 2003)..................................................................... 27

Genentech, Inc. v. Eli Lilly & Co.
    998 F.2d 931 (Fed. Cir. 1993)................................................................ passim

Joint Stock Society v. Heublein, Inc.
    936 F. Supp. 177 (D. Del. 1996).................................................................. 13

Jumara v. State Farm Insurance Co.
    55 F.3d 873 (3rd Cir. 1995) ........................................................... 20, 21, 23

Kahn v. General Motors Corp.
    889 F.2d 1078 (Fed. Cir. 1989)..................................................................... 19

Kemper v. Ureco
    1991 U.S. Dist. LEXIS 8843 (E.D. Pa.) ................................................. 10, 11

Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.
    342 U.S. 180 (1952).................................................................................... 12

Lab. Corp. of Am. Holdings v. Chiron Corp.
    384 F.3d 1326 (Fed. Cir. 2001)..................................................................... 31

Mallinckrodt Medical Inc. v. Nycomed Imaging AS
    49 U.S.P.Q.2d 1474 (E.D. Mo. 1998)...................................................... 10, 15

Mobil Oil Corp. v. Linear Films, Inc.
    718 F. Supp. 260 (D. Del. 1989)..................................................................... 8

National Foam, Inc. v. Williams Fire & Hazard Control, Inc.
    1997 U.S. Dist. LEXIS 16734 (D. Del. 1997) ..................................... 9, 12, 19

Novo Nordisk of North America, Inc. v. Genentech, Inc.
    874 F. Supp. 630 (S.D.N.Y. 1995) ............................................................... 12

Optima Inc. v. Republic Indus., Inc.
    1995 U.S. Dist. LEXIS 2213 (E.D. La. Feb. 21, 1995) .................................................. 9

Potts v. Allis-Chalmers Corp.
    118 F.R.D. 597 (N.D. Ind. 1987) ...................................................................................... 10

Ricoh Co. Ltd. v. Honeywell, Inc.
    817 F. Supp. 473 (D.N.J. 1993) ......................................................................................... 18

Roadmaster Corp. v. NordicTrack, Inc.
    29 U.S.P.Q.2d 1699 (N.D. Ill. 1993) ............................................................................... 19

Rockwell Techs. LLC v. Spectra-Physics Lasers, Inc.
    2002 U.S. Dist. LEXIS 5180 (D. Del. 2002) .................................................................... 9

Schering Corp. v. Amgen Inc.
    969 F. Supp. 258 (D. Del. 1997) ......................................................................................... 9

Schreiber v. Eli Lilly & Co.
    2006 U.S. Dist. LEXIS 13477 (E.D. Pa. 2006) ............................................................... 9

Serco Services Co., L.P., v. Kelley Co., Inc.
    51 F.3d 1037 (Fed. Cir. 1995) ........................................................................................... 12

SRI International, Inc. v. Internet Security Systems, Inc.
    2005 U.S. Dist. LEXIS 6797 (D. Del. 2005) .................................................................... 8

Taylor v. Ishida
    2002 U.S. Dist. LEXIS 9916 (N.D. Tex. 2002) ............................................................... 17

Tegal Corp. v. Tokyo Electron Co.
    248 F.3d 1376 (Fed. Cir. 2001) ........................................................................................... 8

Thales Airborne Sys. S.A. v. Universal Avionics Sys. Corp.
    2006 U.S. Dist. LEXIS 41895 (D. Del. 2006) ................................................................ 31

Turn of the Century Solution, L.P. v. Int'l Rectifier Corp.
    2006 U.S. Dist. LEXIS 39893 (D. Del. 2006) ................................................................ 20

United States v. Bestfoods
    524 U.S. 51 (1998) ............................................................................................................... 8

Whelan v. United Pac. Indus.
    2002 U.S. Dist. LEXIS 21827 (E.D. Pa. Nov. 1, 2002) .................................................. 9

Winner Int'l Royalty Corp. v. Wang
    202 F.3d 1340 (Fed. Cir. 2000) ......................................................................................... 20

Zoetics, Inc. v. Yahoo!, Inc.
    2006 U.S. Dist. LEXIS 46910 (D. Del. 2006) ................................................................ 22

Zoltar Satellite Systems, Inc. v. LG Electronics Mobile Communications Co.
    402 F. Supp. 2d 731 (E.D. Tex. 2005) .............................................................................. 18

Statutes and Rules

28 U.S.C. § 1404(a) ................................................................................... 20

F.R.C.P. 15(c)(2)........................................................................................ 10

# I.     **INTRODUCTION**

The patent involved in this case, U.S. Patent No. 5,130,792 ("the '792 patent"), issued on July 14, 1992, and is entitled "Store and Forward Video System." The Court is greatly familiar with the '792 patent because it was also the subject of the litigation styled USA Video Technology Corp. v. Movielink LLC, C.A. 03-368-KAJ ("the Movielink litigation"). In the Movielink litigation, the Court granted summary judgment of non-infringement in favor of Movielink, 354 F. Supp. 2d 507 (2005), and the Court of Appeals for the Federal Circuit summarily affirmed. *See* 2006 U.S. App. LEXIS 14699 (2006).

Immediately thereafter, on June 13, 2006, Defendant USA Video Technology Corp. ("USVO") launched an attack against several cable services providers and others, alleging infringement of the '792 patent. Rather than proceeding in the District of Delaware, USVO filed suit in the Eastern District of Texas. There is no logical connection between USVO and the Texas forum, but it is a jurisdiction in vogue with patentees.

Plaintiff Time Warner Cable Inc. ("TWC") was ***not*** one of the named defendants in Texas, and for reasons explained later herein, believes that any claim that it infringes the '792 patent is frivolous. Nevertheless, TWC was reasonably apprehensive about being sued for patent infringement. Thus, TWC brought claims before this Court for declaratory relief of invalidity, unenforceability and non-infringement of the '792 patent on June 15, 2006.

USVO does not contend that Delaware is not an appropriate forum where it might litigate its claims against TWC, nor does it contend that TWC acted precipitously in filing this lawsuit. Rather, USVO now seeks to include its claims against TWC into the

menagerie of claims that USVO has brought in Texas. TWC respectfully submits that it should not be required to proceed in Texas, either as a part of USVO's litigation against others, or as a separate lawsuit.

After this litigation was filed, on July 11, 2006, USVO requested, and TWC agreed with this Court so ordering, that USVO could have a 30-day extension to respond to the complaint. On August 10, 2006, USVO filed an answer, *including* asserting an infringement counterclaim against TWC.

At no point, from June 15, 2006, up to when it filed its infringement counterclaim, did USVO take any action against TWC in its Texas litigation, or even state that it would do such. Rather, only after asserting its infringement claim in Delaware, and after filing the present motion to dismiss, stay or transfer in Delaware, did USVO file an amended complaint in Texas on August 18, 2006, naming TWC and asserting in Texas the same claim it already had pending in Delaware against TWC.

USVO offers no reason to deviate from the first-to-file rule, under which Delaware is the first-filed jurisdiction. The mere fact that USVO brought different infringement claims against other defendants in Texas before TWC filed this action is immaterial. Indeed, by first proceeding against Movielink in Delaware, and then more recently against other entities in Texas, USVO demonstrates that it need not (and apparently does not want to) litigate all of its infringement claims in a single Federal District Court.

Therefore, TWC respectfully submits that precedent establishes that the claims between TWC and USVO that are first pending in Delaware proceed in Delaware, and that the motion to dismiss, stay or transfer to Texas be denied. Further, in view of the co-pending patent infringement claims that USVO first asserted in Delaware and then

duplicated later in Texas, TWC respectfully submits that this Court enjoin USVO from proceeding with any claims against TWC in the Texas District Court that are logically related to the claims brought first in Delaware.

## II.    BACKGROUND

### A.    2000-2001 – USVO Advises TWC And Others Of Possible Infringement Of The '792 Patent, But Takes No Action Against TWC

More than seven years after the '792 patent issued, USVO, through its outside counsel, sent a letter dated December 8, 2000 to TWC enclosing the '792 patent and asserting that "[i]t has come to our attention that Time Warner Cable may require a license from USA Video." Declaration of Andrew T. Block in Opposition to USVO's Motion to Dismiss, Stay or Transfer ("Block Decl."), Ex. A.[1] The letter requested a response by December 22, 2000. TWC has no record of hearing from USVO again until 2006.

Separately, at around the same time, USVO's outside counsel sent a letter to Time Warner Inc. (then known as "AOL Time Warner Inc.") dated March 5, 2001 (hereinafter "TWI"). Declaration of Matthew S. Jorgenson in Opposition to USVO's Motion to Dismiss, Stay or Transfer ("Jorgenson Decl."), Ex. A. This letter referenced an earlier letter sent to America Online, Inc. (Jorgenson Decl. Ex. B) and, suggesting that TWI required a license to the '792 patent, offered to enter into licensing discussions.[2]

---

[1] An unsigned copy of the Block Declaration is attached as Exhibit Z to the Jorgenson Decl., and a signed copy will be filed shortly.

[2] America Online, Inc. and the Time Warner Inc. merged in January of 2001 and became "AOL Time Warner Inc." AOL Time Warner Inc. subsequently changed its name to Time Warner Inc.

**B.**    **2003-2006 – USVO Brings And Pursues A Patent Infringement Claims Against Movielink In Delaware**

Notwithstanding the above-mentioned correspondence, USVO decided to file a complaint accusing Movielink of infringing the '792 patent, on April 10, 2003, but not naming as defendants either TWC or TWI.[3]

On November 4, 2003, Movielink filed a motion to transfer the case to the Central District of California. Jorgenson Decl., Ex. E. USVO opposed, arguing, *inter alia*, that Delaware was the forum that it selected and that this choice was entitled to deference; and that Delaware was the forum of Movielink's incorporation, a convenient forum in which USVO should be permitted to litigate, and a forum that had substantial experience with patent cases. Jorgenson Decl., Ex. F. On January 9, 2004, the Court agreed with USVO and denied Movielink's motion.

Following a year of both fact and expert discovery, on October 25, 2004, Movielink filed a claim construction brief and three dispositive motions addressing various theories of non-infringement and invalidity. *See* D.I. 131-137 (C.A. 03-368-KAJ). The Court conducted a Markman and dispositive motions hearing on November 30, 2005, and on January 28, 2005 the Court granted one of Movielink's motions for summary judgment, disposing of the case without the need to decide the remaining issues briefed and argued by the parties. *See* 354 F. Supp. 2d 507. USVO moved for

---

[3] Although TWI holds an indirect ownership interest in both TWC and Movielink, neither are wholly-owned subsidiaries of TWI. *See* Block Decl. ¶ 4. USVO acknowledged its understanding of the commonality of ownership in a recent 10-Q filing with the SEC by referring to parties in both the Movielink case and the present case using the NYSE ticker symbol TWX. Jorgenson Decl., Ex. C at 26-27. Additionally, Movielink filed and served on USVO a Certificate of Interest in connection with USVO's appeal dated August 22, 2005 identifying TWI under the category of "[a]ll parent corporations and any publicly held companies that own 10 percent or more of the stock of the party [Movielink]." Jorgenson Decl., Ex. D.

reconsideration, which was denied (*see* 2005 U.S. Dist. LEXIS 11295) and then filed an appeal.

The Federal Circuit heard oral arguments on June 6, 2006. That day, USVO issued a press release quoting its counsel, Mr. Goldstein, as saying, "I believe the oral argument went very well as the panel seemed to understand the single issue on this appeal, namely whether the trial court misapplied the claim construction in finding the Movielink system does not infringe the USVO '792 patent. I remain optimistic about the ultimate outcome." Jorgenson Decl. Ex. G. Mr. Goldstein was also reported to have said that the decision by the Federal Circuit could take as long as "three months to a year." Jorgenson Decl. Ex. H. The Federal Circuit affirmed without opinion under Fed. Cir. R. 36 the next day. *See* 2006 U.S. App. LEXIS 14699 (Fed. Cir. June 7, 2006).

C.   **November 3, 2004 – USVO Admits That The '792 Patent Does Not Cover A "Broadcast Environment" Such As Used By TWC**

During the course of the Movielink Litigation, Movielink filed a "Motion for Summary Judgment of Non-Infringement, and [] Alternative Motion for Summary Judgment of Invalidity" (D.I. 135), which led to the Court's grant of summary judgment. In its November 3, 2004 opposition to that motion, USVO made various arguments and admissions about the scope of the '792 patent claims. One of the admissions that USVO made was that the claims do not cover "a 'broadcast' environment in which the program is transmitted to several users" because in such a system, "[n]o connection is formed with the intended recipient." *See* Movielink D.I. 143 at 17. USVO made this admission in distinguishing a prior art reference (Walter, USP 4,506,387, Jorgenson Decl., Ex I), and the same distinction is true of TWC's system. According to USVO, such a system does not have "a distribution interface that initiates connections," which, as the Court will recall, was the dispositive issue in the Movielink case.

5

**D.**   **June 13, 2006 – USVO Files A Patent Infringement Claim In Texas Against Entities That Provide Video-On-Demand Cable Services, But Not Against TWC Until Much Later**

Within less than a week of the Federal Circuit's order in the Movielink case and using the same attorneys that handled its appeal, USVO filed a complaint in the Eastern District of Texas on June 13, 2006, accusing seven defendants of infringing the '792 patent, including TWI. *See* USVO's Motion, Ex. A, Case No. 2:06-CV-239 (hereafter "the Texas case"). TWC was *not* named as a defendant.

The next day, on June 14, 2006, USVO issued a press release announcing it had filed suit "alleging that its U.S. Patent No. 5,130,792 is infringed by Time Warner, Inc. (NYSE: TWX)" and others. Jorgenson Decl., Ex. J. TWC was not mentioned in the press release. Neither TWI nor TWC were ever served with this complaint.

**E.**   **June 15, 2006 – In Delaware, TWC Files For Declaratory Relief That The '792 Patent Is Not Infringed, Invalid And Unenforceable And USVO Asserts Counterclaims For Patent Infringement Against TWC For The First Time And Well Before Such Claims Were Made By USVO Against TWC In Texas**

On June 15, 2006, TWC filed the present case against USVO seeking a declaratory judgment that, *inter alia*, its business activities, including operating digital cable systems that provide video-on-demand, do not infringe the '792 patent. (D.I. 1). TWI is not a plaintiff in this case. The Complaint was served on USVO by mail on June 20, 2006 and by hand on July 3, 2006. Jorgenson Decl. Exs. K and L.

After seeking and receiving a 30-day extension to respond, on August 10, 2006, USVO filed an answer and a patent infringement counterclaim against TWC in Delaware. This was the first time that USVO brought a claim against TWC for infringement of the '792 patent, although it had been well over five years since it had identified TWC as a potential infringer.

6

At the same time, USVO filed the present motion seeking to have this case dismissed, stayed or transferred. At that time, TWC was not named as a party and had not been served with any complaint in the Texas case.

**F.**    **August 18, 2005 – In Texas, USVO Amends Its Complaint To Name TWC As A Defendant**

From the time it filed a complaint in Texas in June and through mid-August when it asserted its counterclaim in Delaware against TWC, USVO took no action against TWC in Texas.[4] On August 18, 2006, USVO filed an amended complaint in Texas, and for the second time in two weeks asserted an infringement claim regarding the '792 patent against TWC. Jorgenson Decl., Ex. M. This complaint was not served on TWC until August 22. The deadline for TWC to respond to this complaint has not yet passed. Further, USVO has recently filed a motion for leave to file a second amended complaint whereby it seeks to add yet another entity to the Texas proceedings.

### III.    ARGUMENT

**A.**    **The Present Delaware Case Is The First-Filed Case And Should Not Be Stayed Or Dismissed**

In its Motion, USVO correctly cites the Genentech case as setting forth the general rule that the first-filed case, even if it is a declaratory judgment action, is favored over a second-filed patent infringement action. Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931 (Fed. Cir. 1993) (dismissal in favor of second-filed case was improper where there were "sound reasons" for the choice of forum in the first-filed declaratory judgment case and the "only stated reason for the district court's discretionary dismissal" was that a direct action was later brought elsewhere).

---

[4] Further, USVO promptly served every party named as a defendant in its original Texas complaint, except for TWI, which it never served. As another aspect of its August 18, 2006 amended complaint, USVO dropped its infringement claim against TWI. USVO has never offered any explanation for its amendments.

However, USVO's reliance on <u>Genentech</u> is misplaced. The <u>Genentech</u> compels the denial of USVO's motion to dismiss or stay. The present Delaware case is the first-filed case, and there are "sound reasons" for proceeding in Delaware.

At the outset, USVO incorrectly asserts that the case it filed in the Eastern District of Texas against several entities, one of which was TWI, is the first-filed case. USVO completely ignores the fact that TWI is a different entity than TWC. Moreover, TWC is not a wholly-owned subsidiary of TWI. Block Decl., ¶ 4. TWC is operated and managed separately by different officers and directors. *See id.*, ¶ 5. Thus, TWC is not an "alter ego" or "agent" of TWI, and cannot subject TWI to liability for patent infringement based on its actions. <u>SRI International, Inc. v. Internet Security Systems, Inc.</u>, 2005 U.S. Dist. LEXIS 6797, *9 (D. Del. 2005) ("A parent company is not liable for the actions of a subsidiary solely because it is a subsidiary. A finding of liability requires piercing the corporate veil.") *citing* <u>United States v. Bestfoods</u>, 524 U.S. 51, 61 (1998); <u>Tegal Corp. v. Tokyo Electron Co.</u>, 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("in the absence of evidence showing that the parent company either was an alter ego of the subsidiary or controlled the conduct of the subsidiary," a parent company is not liable for infringement for "mere inaction in the face of infringement by a subsidiary").[5] Because it involved a separate entity at the time it was filed, the Texas case is not the first-filed case.[6]

---

[5] In Delaware, to pierce the corporate veil, USVO would have to show not only "a lack of attention to corporate formalities or complete domination and control by the parent corporation," but also that "the parent/subsidiary relationship would work a fraud, injustice or inequity." *See* <u>SRI International</u>, 2005 U.S. Dist. LEXIS 6797, *9 (as to "alter ego") and <u>Mobil Oil Corp. v. Linear Films, Inc.</u>, 718 F. Supp. 260, 266 (D. Del. 1989) (same test applies to "agency" analysis).

[6] On August 18, 2006, more than two months after the present case was filed, USVO amended its complaint in Texas to name TWC and to drop TWI as a party. USVO has offered no explanation for why it did so or the timing of its actions.

Undoubtedly, USVO will, in its reply brief, point to cases wherein courts have held that subsequent changes in parties do not affect a case's status as first-filed.[7] Such cases fall into two categories. The first category relies on the doctrine of relation back under F.R.C.P. 15(c). *See e.g.*, National Foam, Inc. v. Williams Fire & Hazard Control, Inc., 1997 U.S. Dist. LEXIS 16734, *13-14 (D. Del. 1997); Optima Inc. v. Republic Indus., Inc., 1995 U.S. Dist. LEXIS 2213 (E.D. La. Feb. 21, 1995). The second category of cases hold that a relation back analysis is unnecessary, and that the inquiry "turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute." *See e.g.*, Schreiber v. Eli Lilly & Co., 2006 U.S. Dist. LEXIS 13477, *8 (E.D. Pa. 2006); Whelan v. United Pac. Indus., 2002 U.S. Dist. LEXIS 21827 (E.D. Pa. Nov. 1, 2002); Schering Corp. v. Amgen Inc., 969 F. Supp. 258 (D. Del. 1997); Advanta Corp. v. Visa U.S.A., 1997 U.S. Dist. LEXIS 2007 (E.D. Pa. Feb. 19, 1997).

However, both categories of cases are easily distinguishable from the present case. In all of the above cases, there was a failure to name *all* of the correct parties in the first-filed complaint, not a naming of the incorrect party entirely. Thus, the defect in parties in the above cases could be remedied by an amendment *adding* the correct parties to an existing dispute. In contrast, in the Texas case, USVO named one party, TWI, then in its recent amendment dropped TWI and instead named TWC, a different party altogether. Put another way, prior to amendment on August 18, the subject of the Texas

---

[7] USVO knew that the Texas case originally named a different party – TWI – yet it chose to ignore this fact in its opening brief while making its first-to-file argument. Having made this decision, USVO should not be permitted to raise the argument for the first time by its reply brief that a claim against TWI suffices under the first-to-file law. *See* L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief"); Rockwell Techs. LLC v. Spectra-Physics Lasers, Inc., 2002 U.S. Dist. LEXIS 5180, *8 (D. Del. 2002) ("tactic of reserving new arguments for [a] reply brief amounts to impermissible 'sandbagging'" and new arguments will not be considered). On this basis alone, the Court should conclude that the present lawsuit is the first-filed case and deny USVO's Motion.

suit was not the same as the subject of the present suit: the alleged infringement of the '792 patent by *TWC's* cable system.[8]  Thus, it was the Delaware Court that first properly gained possession of the subject of the present dispute, on June 15, 2006.  *See e.g.,* Mallinckrodt Medical Inc. v. Nycomed Imaging AS, 49 U.S.P.Q.2d 1474, 1477 (E.D. Mo. 1998) (reasoning of "first to have possession of the subject" cases is not applicable where court lacked jurisdiction over the party named in the first case).

Furthermore, the equitable concept of relation back does not apply where the failure to name a party is not attributed to a reasonable mistake.  F.R.C.P. 15(c)(2); Mallinckrodt Medical, 49 U.S.P.Q.2d at 1477 (E.D. Mo. 1998) (no relation back for purposes of first-filing inquiry in the absence of a claim of mistake in naming correct party) *citing* Kemper v. Ureco, 1991 U.S. Dist. LEXIS 8843 (E.D. Pa.) (reviewing case law on this question).  "Where a plaintiff should have been aware of the proper defendant at the outset of a case, that plaintiff's delay in amending the complaint could appear to the potential defendant as strategy rather than a mistake."  *Id. citing* Potts v. Allis-Chalmers Corp., 118 F.R.D. 597 (N.D. Ind. 1987).

In the present case, the record does not support even the suggestion that USVO's decision to name TWI in the Texas case was a mistake.  USVO was aware of the distinction between the two entities at least as early as 2000-2001, when it sent letters to both suggesting that each was separately infringing the '792 patent.  *See* Block Decl., Ex. A and Jorgenson Decl., Ex. A.  USVO was again alerted to the difference at the time it

---

[8] Whatever the subject of the Texas suit was prior to amendment, it could not be the alleged infringement of the '792 patent by TWC's cable system because TWI cannot be held liable for such infringement as a matter of law.  USVO has now acknowledged this by dropping TWI from the Texas case entirely.

Moreover, if the "subject of the dispute" is "infringement of the '792 patent," rather than infringement by a particular system, then the Movielink case is the first-filed case.

was served with the complaint in the present case on June 20, 2006. The Delaware complaint makes clear that TWC operates cable systems, and does not name TWI as a plaintiff. (D.I. 1).

Despite this prior knowledge and despite being put on notice again in June, USVO took no action for two months. When it did take action, USVO first brought infringement claims against TWC in Delaware as counterclaims on August 10. USVO did not amend its Texas complaint until August 18. Moreover, putting all of the above aside, even a brief investigation (or a reasonable investigation as required under Rule 11) would have revealed that TWC, and not TWI, operates cable systems. *See* Kemper, 1991 U.S. Dist. LEXIS 8843, *5 ("Plaintiff's diligence in researching which defendant to sue is also relevant" to relation back). Thus, USVO was clearly aware, or at least reasonably should have been aware, of TWC, and its decision to sue TWI cannot reasonably be attributed to mistake. Hence, relation back under Fed. R. Civ. P. 15(c) is not permitted and the present Delaware case must be considered the first-filed case.[9]

**B.**      **Even If The Texas Case Were Considered The First-Filed, This Case Falls Within The Exceptions To The First-Filed Rule Because Delaware Is The Most Convenient And Appropriate Forum**

Even assuming that the Texas case is the first-filed case, USVO's discussion (and application) of the Genentech case is skewed and incomplete. In Genentech, the Federal Circuit observes that while the "general rule favors the forum of the first-filed action," exceptions to this rule "are not rare" and "are made when justice or expediency requires."

---

[9] If corporate formalities and distinctions are to be disregarded – and TWC does not believe that they can or should be – then the Movielink case should be considered the first-filed case. Neither TWC nor Movielink are wholly-owned subsidiaries of TWI, both are governed and operated as separate and independent entities, and neither is the "alter ego" of TWI. Block Decl., ¶¶ 4-5. However, both are partially owned indirectly by TWI. USVO cannot have it both ways, arguing that corporate distinctions should be disregarded when it suits USVO but carefully observed when it does not.

*Id.* at 937. The trial court's discretion in this regard "tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served." *Id.* at 938. When analyzing the reasons for making such an exception, the Federal Circuit, following the lead of the Supreme Court, "cautioned against 'rigid mechanical solutions' to questions of forum, stressing the importance of conservation of judicial resources and the comprehensive disposition of litigation." *Id. citing* Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 184 (1952). Moreover, a declaratory judgment action should not be treated differently than a substantive action. *Id.*

Recognized exceptions to the first-to-file rule include "when the choice of the forum of the first filed case was the result of pure forum shopping, if the balance of convenience favors the second forum." National Foam, 1997 U.S. Dist. LEXIS at *20, *23 (dismissing first-filed case because it was filed "solely for forum-shopping purposes") *quoting* Novo Nordisk of North America, Inc. v. Genentech, Inc., 874 F. Supp. 630, 632 (S.D.N.Y. 1995) (no forum-shopping because case was filed in the district of the defendant's principal place of business). "The Court may also depart from the rule based on general considerations of 'judicial and litigant economy' and 'the just and efficient disposition of disputes.'" *Id. citing* Serco Services Co., L.P., v. Kelley Co., Inc., 51 F.3d 1037, 1039 (Fed. Cir. 1995); Capitol Records Inc. v. Optical Recording Corp., 810 F. Supp. 1350, 1354 (S.D.N.Y. 1992) (forum shopping exception "is not the only exception that may be considered" and "[j]udicial economy is a factor of substance that ways heavily in favor of departing from the first-filed rule"). Considerations relating to "judicial and litigant economy" include "the convenience and availability of witnesses," "absence of jurisdiction over all necessary or desirable parties," "the

possibility of consolidation with related litigation," or "considerations relating to the real party in interest." <u>Genentech</u>, 998 F.2d at 938.

In its Motion, USVO fails to identify a single reason why the Eastern District of Texas is a more appropriate forum than Delaware, other than the fact that USVO prefers to proceed there. To the contrary, there are several reasons why Delaware is the more appropriate forum, many of which USVO relied upon in its opposition to Movielink's motion to transfer the Movielink case. Thus, even assuming that the present case is not the first-filed case, all of the considerations relating to "judicial and litigant economy" outlined in the <u>Genentech</u> case above weigh in favor of proceeding in Delaware.

1.     <u>**The location of the parties, witnesses and documents favors Delaware**</u>

TWC is a Delaware corporation; and Delaware is its "home turf." *See* <u>Joint Stock Society v. Heublein, Inc.</u>, 936 F. Supp. 177, 186 (D. Del. 1996) ("'Home turf' now refers to the forum closest to the plaintiff's residence or principal place of business in which the party can effect personal service over the principal defendant"); Block Decl., ¶ 3. Additionally, TWC has its corporate headquarters in Connecticut, and its corporate research and development division, which is responsible for the design and development of its cable systems, in Charlotte, North Carolina and also Westminster, Colorado. *Id.*; Declaration of Glen Hardin in Opposition to USVO's Motion to Dismiss, Stay or Transfer ("Hardin Decl."), ¶ 4.[10]  Both Connecticut and North Carolina, which are where many of the witnesses and documents relevant to this case are located, are substantially closer to Delaware than to Texas. *Id.*

---

[10] An unsigned copy of the Hardin Declaration is attached as Exhibit Y to the Jorgenson Decl., and a signed copy will be filed shortly.

USVO alleges that it is a Connecticut corporation with its principal place of business in Connecticut. *See* USVO's Answer to the Complaint (D.I. 9). In its Motion, USVO did not allege that it has any personnel, documents or operations in the Eastern District of Texas, or that it has any connection to that district whatsoever. As will be discussed below, USVO chose the Eastern District of Texas solely out of considerations related to "forum shopping."

Additionally, in the Movielink case, USVO argued that Delaware was a convenient forum that that it would be substantially prejudiced if the case were transferred west (in that case, to California). *See* USVO's opposition to Movielink's motion to transfer (D.I. 35) at 10-12 ("USVO is litigating near its residence"), Jorgenson Decl. Ex. F. With respect to "litigant economy" issues, nothing has changed since that time. Thus, USVO is estopped from arguing – and indeed does not argue – that Delaware would not be a convenient forum for USVO to litigate this case.

2.      **Questions about personal jurisdiction make Delaware the preferred forum**

In the Texas case, one of the parties, Cox Communications, Inc., has asserted that the Texas Court lacks personal jurisdiction and has moved to dismiss the complaint against it on this ground. *See* Jorgenson Decl. Ex. N. USVO responded by stating that it would need to take additional discovery and schedule a hearing before the Court in Texas to have this determination made. Jorgenson Decl. Ex. O. Thus, there is a substantial question as to whether there is personal jurisdiction over all of the parties named in the

Texas case. *See* <u>Genentech</u>, *supra*, 998 F.2d at 938 ("absence of jurisdiction over all necessary or desirable parties" is a factor weighing against first-filed rule).[11]

However, it undisputed that personal jurisdiction is properly found in Delaware. All of the defendants named in the original, first and second amended complaints in Texas are incorporated in Delaware. USVO has admitted that it is subject to personal jurisdiction in Delaware. *See* USVO's Answer (D.I. 9) at 2 ("USVO admits the allegations of paragraph 4") and Complaint (D.I. 1) at 2 ("This Court has general and specific jurisdiction over USVO"). Thus, Delaware, and not Texas, is the forum where this case can unquestionably proceed with all parties present, should that be considered appropriate by this Court. (However, as explained below, there are many factors that suggested that consolidation would be inappropriate).

### 3.    <u>Consolidation may not be preferable or feasible in this case, but would be most easily accomplished in Delaware</u>

As just explained, Delaware is unquestionably a proper and convenient forum for all of the parties in all of the cases in question. Thus, consolidation, if it were to be contemplated, could most easily occur in Delaware. All of the defendants in the Texas case favor transfer of that action to Delaware, and would consent to transfer. The Comcast parties filed a motion to transfer, in which Charter Communications, Inc. joined. Jorgenson Decl., Exs. P and Q. Cox Communications, Inc. also filed a motion to dismiss and/or transfer. Jorgenson Decl., Ex. N. TWC intends to seek transfer to this district once the Court has ruled on the present motion.

---

[11] One of Cox's affiliates, CoxCom, has also filed a declaratory judgment action in Delaware (C.A. No. 06-394-KAJ). USVO recently sought to add CoxCom as a party in Texas. However, as Cox noted in its motion, the amended complaint will not relate back for purposes of the first-to-file rule because there is no allegation of mistake. *See especially*, <u>Mallinckrodt Medical</u>, *supra*, 49 U.S.P.Q.2d at 1477 (absence of personal jurisdiction over original party distinguishes case from other first-to-file cases); USVO's opposition, Jorgenson Decl., Ex. O (no allegation of mistake by USVO).

As USVO alerted the Court in its August 31 supplemental filing (D.I. 16), Judge Clark denied Comcast's motion (joined by Charter) to transfer to this district on August 31. However, TWC did not have an opportunity to participate in this motion as it had been fully briefed by the time TWC was served on August 22, 2006 and decided before TWC had even entered an appearance in the case. As set forth in this Opposition, there are numerous reasons why TWC's situation is different from that of Comcast and Charter (as well as Cox, whose transfer motion is still pending). Many of these considerations were not before Judge Clark in Texas.

Moreover, there are many reasons why consolidation would be problematic and counterproductive in this case, and it should not be assumed at this stage that consolidation would be preferred. For instance, TWC will strongly resist having to disclose highly propriety and confidential financial information in a way that would make it available to others, including Cox, Comcast and Charter. Also, the accused products are the companies' *cable systems*, and USVO must prove infringement of each separately. For at least these reasons, it seems certain that separate trials will be necessary, at a minimum to avoid confusing and prejudicing the jury. Thus, it may be that, in light of Judge Clark's order, the some of the cases will proceed in Texas and others in Delaware.

Should these cases proceed in separate districts, USVO would have no one to blame but itself. Having initiated its video-on-demand litigation involving the '792 patent in Delaware, USVO elected to open another front in the Eastern District of Texas. USVO could have continued in Delaware – a district that it vigorously argued was convenient in the Movielink case. In fact, should it decide that litigating in both districts

would present a burden, USVO still can have all of the '792 patent litigation proceed in one district by agreeing to transfer to Delaware.

4.    **Considerations of judicial economy favor Delaware**

The most obvious factor relating to judicial economy is this Court's familiarity with the with the patent involved in this case, including its claims and its prosecution history.  Having devoted substantial time and resources in reviewing the briefing in the Movielink case and writing two opinions, this Court is already familiar with a large number of the issues that are likely to be disputed in this case, even if they were not all decided in the Movielink case.  Furthermore, as explained in Section III.D.1 below, at least one of the issues that TWC believes to be dispositive of the present case (whether TWC has a "distribution interface that initiates connections") is the same issue that was dispositive of the Movielink case.

"Judicial economy is a factor of substance that weighs heavily in favor of departing from the first-filed rule."  Capitol Records, 810 F. Supp. at 1354 (where the same judge who had conducted a previous trial in Delaware (Judge Farnan) was also assigned the second-filed case, the first-filed rule was rejected because "Judge Farnan's knowledge gained in the earlier Time Warner suit will allow a significant conservation of scarce judicial resources.  In addition, his experience and familiarity with the patents reduces the possibility of a mistake at trial, and the consequent use of additional judicial resources to correct the problem.").  This is true even where the second-filed action is a declaratory judgment action.  In Taylor v. Ishida, the court held that "[a] court can defer to a second-filed [declaratory judgment] action when, as here, the judge in the subsequent case has extensive prior experience concerning the patent in suit."  2002 U.S. Dist.

LEXIS 9916, *27-28 (N.D. Tex. 2002).[12]  The Court in <u>Ricoh Co. Ltd. v. Honeywell, Inc.</u>, 817 F. Supp. 473, 487 (D.N.J. 1993), also transferred a first-filed case to the district of a second-filed declaratory judgment action because of considerations relating to judicial economy and the other court's familiarity with the issues in the case. *See also,* <u>Zoltar Satellite Systems, Inc. v. LG Electronics Mobile Communications Co.</u>, 402 F. Supp. 2d 731, 735 (E.D. Tex. 2005) (Transferring case, noting that "[i]n cases that involve a highly technical subject matter, such as patent litigation, judicial economy may favor transfer to a court that is already familiar with the issues involved in the case").

TWC is aware of Judge Jordan's likely departure to the Third Circuit Court of Appeals.  However, it is presently not clear when this will occur.  TWC has requested leave to file a dispositive motion directed to the "distribution interface that initiates connections" issue at an early stage of the case, so as to take advantage of Judge Jordan's familiarity with this issue and resolve this case with minimal expenditures of resources (both judicial and those of the parties).

Moreover, this Court's experience with the issues in this case is but one consideration that warrants denial of USVO's motion.  As explained throughout this Opposition, all other relevant factors all compel the same result: Delaware is the most appropriate forum for this case regardless of who the presiding judge happens to be.[13]

---

[12]  Although the court initially denied the defendants' motion to transfer, it noted that "[i]n denying defendants' motion, however, the court indicates its willingness to stay the present case, or to transfer it to the Northern District of California [if the California judge] determines that the litigation before him should go forward." 2002 U.S. Dist. LEXIS 9916 at *27-28.  The case was ultimately transferred after the California court determined that it should proceed there. *See* Case No. 3:02-CV-00402 (N.D. Tex.), October 30, 2002 Order (Jorgenson Decl., Ex. S).

[13]  As USVO argued in the Movielink case, yet another "advantage to litigating this action" in Delaware was that "this district is particularly conversant with patent cases." USVO's opposition to Movielink's transfer motion, *supra*, at 7.

**5.**    **USVO's choice of the Eastern District of Texas is entitled to no weight as it was motivated purely by forum shopping**

USVO bases its entire Motion on the first-filed rule and its contention that the Texas lawsuit was the first-filed case. However, "where forum shopping alone motivated the choice of sites for the first suit," the first-filed rule does not apply. <u>Kahn v. General Motors Corp.</u>, 889 F.2d 1078, 1081 (Fed. Cir. 1989); *See also* <u>Genentech</u>, 998 F.2d at 938 (first-filed rule does not apply "when forum shopping was the only motive for the filing"); <u>National Foam</u>, *supra*, 1997 U.S. Dist. LEXIS 16734, *20 (exception "when the choice of the forum of the first filed case was the result of pure forum shopping, if the balance of convenience favors the second forum"). Thus, even if the Texas case were the first-filed case, USVO's choice of forum was motivated purely by forum-shopping considerations and is entitled to no weight or consideration.[14]

In its Motion, USVO fails to identify a single reason why Texas would be a preferable forum. USVO does not have any connection to the Eastern District, and the defendants' only connection arises because of cable services that are offered there and most everywhere else in the country. Indeed, there was no reason for USVO to bring this case in the Eastern District of Texas other than for considerations related to forum

---

[14] The court in <u>Roadmaster Corp. v. NordicTrack, Inc.</u>, 29 U.S.P.Q.2d 1699, 1701 (N.D. Ill. 1993) explained what is meant by "forum shopping" in this context:

> Forum shopping, as condemned in <u>Genentech</u>, is seeking out a forum solely on the basis of having the suit heard in a forum where the law or judiciary is more favorable to one's cause than in another. On the other hand, filing suit in a forum that is convenient to the party filing is not the type of forum shopping denounced in <u>Genentech</u>. A party has the right to file suit in any district where jurisdiction and venue are proper. If filing in a district that is more convenient to the plaintiff than to the defendant is enough to open the plaintiff up to a charge of forum shopping, then the exception would swallow the rule. To protect itself from dismissal in favor of a subsequently filed action, a plaintiff would have to file in the forum most convenient to the defendant.

USVO did not select the Eastern District of Texas for any considerations relating to convenience, and so engaged in "the type of forum shopping denounced in <u>Genentech</u>." *Id.*

shopping, and to find a more favorable forum after having lost the Movielink case in Delaware. The Eastern District of Texas is currently perceived as a more favorable forum to patentees. USVO even brazenly admits that forum shopping considerations such as the fact that "jurors are generous, the rules of law applied more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor" motivated its choice in this case. *See* USVO's opposition to Comcast's motion to transfer, Jorgenson Decl., Ex. R.

Patent owners are within their rights to bring cases in the Eastern District of Texas because of forum-shopping considerations. However, Federal Circuit law is clear that the deference ordinarily given to a plaintiff's choice of forum in a first-filed case does not apply when that choice was motivated solely by forum shopping considerations. Because so many other factors make Delaware the most appropriate forum, the first-filed rule is inapplicable as to USVO in this case.

C.    **Transfer Of This Case To Texas Is Not Appropriate**

1.    **Legal standard**

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1352 (Fed. Cir. 2000). Under Third Circuit law, the burden of establishing the need for transfer rests with the moving party. Jumara v. State Farm Insurance Co., 55 F.3d 873, 879 (3rd Cir. 1995). The movant must "establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Turn of the Century Solution, L.P. v. Int'l Rectifier Corp., 2006 U.S. Dist. LEXIS 39893, *3 (D. Del. 2006) *citing* Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *Id.* at *4.

The Third Circuit has set forth six private and six public factors that are to be considered when deciding whether or not to transfer venue. <u>Jumara</u>, 55 F.3d at 879-880. The six private factors are:

    (1)    the plaintiff's forum preference as evidenced by his or her original choice,

    (2)    the defendant's preference,

    (3)    whether the claim arose elsewhere,

    (4)    the convenience of the parties due to their relative physical and financial condition,

    (5)    the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and

    (6)    the location of books and records, to the extent that the books and records could not be produced in a certain forum.

The six public factors are:

    (1)    the enforceability of the judgment,

    (2)    practical considerations regarding the ease, speed, or expense of trial,

    (3)    the administrative difficulty due to court congestion,

    (4)    the local interest in deciding local controversies in the home forum,

    (5)    the public policies of the two fora, and

    (6)    the trial judge's familiarity with the applicable state law in diversity cases.

Thus, USVO has the burden of showing that the balance of these twelve factors weighs "strongly in favor of a transfer."

    2.    <u>**The Jumara factors weigh against transfer**</u>

        a.    <u>**Private factors**</u>

As to the private factors, USVO alleges that only the first two are relevant. Motion at 5. However, these factors do not weigh in favor of transfer. Plaintiff TWC prefers Delaware, Defendant USVO prefers Texas. The remaining factors do not weigh

in favor of Texas, and the conveniences relating to the location of the parties, witnesses and documents favor Delaware.

Instead, USVO argues that "plaintiff's choice of forum" "weighs heavily in favor of Defendant USVO in the Delaware case, as it is the plaintiff in the first filed action." *Id.* However, in doing so, USVO completely confuses the status of the parties as plaintiff and defendant and conflates the standard under a transfer motion with the standard for determining priority under the first-to-file rule discussed above. Worse, USVO wrongly attempts to impose a higher standard on the first-to-file inquiry.

The obvious must be repeated: TWC is the plaintiff in this case. Under a transfer inquiry, it is TWC's choice of forum, as the plaintiff, that "is entitled to substantial deference and [that] should not be lightly disturbed." Motion at 5 *quoting* Zoetics, Inc. v. Yahoo!, Inc., 2006 U.S. Dist. LEXIS 46910 (D. Del. 2006). USVO cites no authority for its admittedly "counter-intuitive" suggestion that this standard should be reversed so that this factor "weighs heavily in favor of [the] defendant." *Id.* USVO should trust its intuition on this issue – this result seems counter-intuitive because it is wrong.

By attempting to twist this factor in its favor, USVO is trying to re-write the standard for evaluating priority under a first-to-file inquiry. The correct standard, as cited in Section III.B above, is that the "general rule favors the forum of the first-filed action," and exceptions to this rule "are not rare" and "are made when justice or expediency requires." Genentech, 998 F.2d at 937. USVO's incorrect reasoning suggests that the standard is that a first-filed "plaintiff's choice of forum is entitled to substantial deference and should not lightly be disturbed." These two standards are different and must not be confused.

b.    **Public factors**

As to the public factors, the only factor USVO identifies as favoring transfer to Texas is the possibility of consolidation in Texas, which is relevant to the second <u>Jumara</u> factor.    However, as explained above, consolidation would be more readily and appropriately achieved in Delaware.    Thus, the possibility of consolidation does not weigh in favor of transfer to Texas.    Moreover, for the reasons stated above, consolidation presents many problems, especially consolidation **for trial** (which is the focus of the second public <u>Jumara</u> factor).    Thus, factors relating to consolidation do not "strongly favor transfer."

Further, other considerations relating to the "ease, speed and expense" of the case do strongly favor Delaware.    *See* discussion in Sections III.B.1-4, *supra*.    Thus, on the whole, the second <u>Jumara</u> factor does not favor transfer but instead favors keeping this case in Delaware.    The fourth public factor also weighs against transfer.    This is a "local" controversy because it involves claims against a Delaware corporation.

In sum, the factors that USVO identifies as supporting transfer, plaintiff's choice of forum and the possibility of consolidation, actually favor keeping the case in Delaware.    Thus, USVO has utterly failed to show that the balance of <u>Jumara</u> factors "strongly" favors transfer, and its motion must be denied.

**D.    <u>As An Additional Factor Against Dismissal, Stay Or Transfer, The Delaware Court's Familiarity With The Subject Of This Litigation Should Lead To A Prompt Resolution Because USVO's Claims Lack Merit</u>**

This case can be resolved expeditiously by this Court because USVO's claim of infringement is frivolous.    That USVO's claim must fail can be easily ascertained by a simple review of the plain language of the claims, especially in light of the prosecution history disclaiming cable broadcast systems, and a comparison of the claims to the

fundamental and uncontroversial aspects of the operation of TWC's systems, which could have been easily discovered through a very basic and superficial investigation. As will be shown below, such a comparison demonstrates that TWC's systems cannot possibly infringe the claims of the '792 patent. Because this conclusion is so easily reached, and because of this Court's familiarity with the claim language and prosecution history, this Court is in the best position to effect a timely and efficient resolution of the dispute between TWC and USVO.

### 1. **TWC does not have a "distribution interface" that "initiates connections"**

As the Court will recall, the dispositive issue in the Movielink case was that the Movielink system "does not have a distribution interface that 'initiates connections.'" 354 F. Supp. 2d 507, 520 *aff'd* 2006 U.S. App. LEXIS 14699.[15] USVO's admissions in the Movielink case compel the same conclusion with respect to TWC's system. In its briefing in the Movielink case, USVO argued that the prior art Walter reference (USP 4,506,387) "does not disclose a distribution interface that initiates connections." USVO's Opposition to Movielink's Summary Judgment of Non-Infringement, and its Alternative Motion for Summary Judgment of Invalidity at 17 (Movielink D.I. 143). USVO argued that Walter describes "a 'broadcast' environment in which the program is transmitted to several users" and as a result, "[n]o connection is formed with the intended recipient."

The applicants made similar arguments during prosecution of the '792 patent, and amended the claims in order to overcome both Walter and Monslow. The applicants first argued that both Walter and Monslow "broadcast" programs to multiple units, and that

---

[15] Although the Court's analysis was limited to claim 1, all claims of the '792 patent require that the distribution interface/central data facility initiates connections with the remote location. *See* independent claim 6 ("initiating a connection over the telephone network to the remote location") and independent claim 9 ("distribution interface initiates a connection with a receiving unit").

Monslow required the use of "scrambling" in order to ensure that programs are "received by the intended recipient." Jorgenson Decl., Ex. T (Amendment at 7-8). The applicants then contrasted the claimed system, arguing that "the distribution interface initiates all calls to remote units" and that "[t]his provides a security feature" rather than by "scrambling." *Id.* at 8. The applicants further argued that "the broadcast cable techniques are clearly not relevant to the claimed invention; they provide for transmission to many possible users simultaneously while the claimed system sends a program only to a single intended recipient." *Id.* The applicants touted the "security provided by calling only preauthorized locations" – which is a direct consequence of the distribution interface initiating the connection – as a feature that "distinguishes" the prior art cable systems. *Id.*

TWC's system does not contain a "distribution interface that initiates connections." Consistent with USVO's characterizations of Walter and Monslow, TWC's system operates "in a 'broadcast' environment in which the program is transmitted to several users." *See* Hardin Decl., ¶¶ 9-11, 13.

Additionally, consistent with USVO's characterization of Monslow,

**REDACTED**

Thus, under USVO's reasoning, no connection is initiated or formed with the intended recipient. Because of this, TWC's system cannot possibly infringe the claims of the '792 patent.

2.    **The set top boxes in TWC's system do not "store" received programs, but receive programs in real time**

All of the claims of the '792 patent plainly require that the "receiver" have the ability to "store" the programs it receives. Claim 1 requires that "a receiver" "for storing the received programs." Claim 6 requires "storing [the selected program] on a mass storage device." Claim 9 requires that each of the receiving units "includes a mass storage subsystem for storing a received video program."

USVO has admitted that a receiver that does not store video data does not fall within the scope of the '792 patent. In a document entitled "USA Video Technology Corporation's Patent No. 5,130,792, Additional Technical Information," USVO makes numerous statements about the "Patent Coverage" of the '792 patent. Jorgenson Decl., Ex. X.[16] One statement USVO makes is that:

> "the following would be excluded from necessitating a license under the Patent: ... Video-streaming originating from a source located at a central facility, to a receiver with no intermediate downloads, progressive streaming functionality, or storage of video data on the destination device."

*Id.* at 2.

TWC's set top boxes do not support "intermediate downloads, progressive streaming functionality, or storage of video data on the destination device." *See* Hardin Decl., ¶¶ 20-21. Most of TWC's set-top boxes do not contain a hard drive or other "mass storage device" capable of storing a received program. *See* Hardin Decl., ¶ 17. Those that do – TWC's set-top boxes with built-in DVR's – are programmed so as to prevent the customer from recording or storing a video-on-demand program. *Id* at 18. Instead,

---

[16] This document was presumably attached to the March 5, 2001 letter to TWI (Jorgenson Decl. Ex. A). Inexplicable, this highly relevant document was not produced by USVO in the Movielink case. *See* Jorgenson Decl. at ¶ 25.

the programs are delivered over a cable network in real time, and "storage in a local unit" or "destination device" cannot occur. *Id* at 17-18.

Moreover, the applicants used this feature to distinguish the claims over the prior art during prosecution. In distinguishing over the Monslow reference (USP 4,890,320), the applicants argued that in Monslow, "[t]he selected programs are broadcast over a cable network in real time. No compression is considered, *nor storage in a local unit*." Jorgenson Decl., Ex. T (5/22/91 Amendment at 7-8). Because TWC's system does not allow "storage in a local unit, TWC's system cannot possibly infringe any of the claims of the '792 patent.[17]

The fact that TWC's set-top boxes do not store programs could have been readily ascertained by even the most basic and superficial investigation. Likewise, one need only attempt to record a video-on-demand program using a set-top box with a built-in DVR to discover that it cannot be done. This only underscores the frivolity of USVO's accusations.

### 3.    TWC transmits programs in real time, not "less than real time"

All of the claims of the '792 patent require that the requested program be transmitted "in less time than is required to view the program(s) in real time." *See* claims 1, 6 and 9. The applicants used this claim element to distinguish both the Cohen and Monslow references during prosecution. *See* Jorgenson Decl., Ex. T (5/22/91 Amendment at 7-8) ("Cohen does not ... allow the program to be downloaded at a faster

---

[17] Although it is difficult to imagine how such an argument could even be made, USVO is estopped from arguing infringement under the doctrine of equivalents as to this element. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 344 F.3d 1359, 1366-7 (Fed. Cir. 2003). The original independent claims contained no "storage" requirement. *See e.g.*, original claim 1 cited at 354 F. Supp. 2d at 521. This element was added during prosecution to overcome the prior art, and the applicants relied on it to distinguish the Monslow reference. *See* Jorgenson Decl., Ex. T (5/22/91 Amendment).

than real time rate"; "[In Monslow], the selected programs are broadcast over a cable network in real time").

Like the Monslow reference, TWC's system "broadcasts" VOD programs "over a cable network in real time." *See* Hardin Decl. ¶¶ 9-11, 13, 15-16.

**REDACTED**

Furthermore, because the set-top boxes cannot store VOD programs, there would be no way to "transmit" them in less than real time. This only further demonstrates that TWC's system is constructed along the lines of the prior art systems distinguished by the applicants during prosecution.[18] TWC cannot possibly infringe this element the claims of the '792 patent.

4.    **TWC delivers VOD over a cable broadcast network, not a switched telephone network**

The plain language of the claims requires that the distribution interface initiates connections and transmits programs over a "**switched telephone** network." *See* Jorgenson Decl. Ex. W ('792 patent), claims 1, 6 and 9. TWC delivers video-on-demand over a **cable** broadcast network. *See* Hardin Decl., ¶¶ 3, 5.

---

[18] Again, given the plain meaning of the claim language, it is difficult to imagine how USVO could argue infringement under the doctrine of equivalents. In any event, USVO is estopped from making such an argument because this element was also added during prosecution to overcome the prior art. *See* Jorgenson Decl., Ex. T. The applicants' first attempt to introduce a variant of this claim limitation resulted in an written description rejection under 35 U.S.C. § 112 ¶ 1 because "such is not recited in the specification." Jorgenson Decl., Ex. U at 3 (7/31/91 Office Action). The applicants amended the claims to their current form. Jorgenson Decl., Ex. V at 6 (11/7/91 Amendment). Thus, this amendment was "material to patentability" and estops USVO from arguing infringement under the doctrine of equivalents.

USVO has admitted that a cable network is not explicitly covered by the "switched telephone network" language of the claims. *See* Jorgenson Decl., Ex. X at 2:

> While there may be technological differences between the switched telephone networks explicitly covered by the Patent and the various alternative means of transmission currently being employed – such as fiber optic, **cable**, and satellite networks … these alternative networks would likely be considered equivalent to the switched telephone network under the Doctrine of Equivalents.

Thus, USVO admits cable systems do not literally infringe, and alleges that infringement is possible only under the doctrine of equivalents. However, USVO is unequivocally estopped from arguing infringement under the doctrine of equivalents because of arguments and amendments made during prosecution of the '792 patent.

As the Court will recall, the original claims were much broader than the claims that issued. *See* 354 F. Supp. 2d at 521 (reciting original claim language). The original claim 1, for example, provided simply "a communications link for transmitting programs to the remote locations." *Id.* In response to prior art rejections, the applicants substantially narrowed the claims to include the "switched telephone network" limitation, among others, and argued that this distinguished the claims over prior art cable systems. Jorgenson Decl., Ex. T at 8 (5/22/91 Amendment). Thus, not only does the prosecution history make clear that cable systems such as TWC's are not within the literal scope of the claims, it estops USVO from arguing that such systems infringe under the doctrine of equivalents.

Furthermore, in their remarks accompanying their amendments, the '792 patent applicants made explicitly clear that cable networks and switched telephone networks are different and that the '792 patent was not intended to cover a cable system. For example, the applicants stated that "the prior art references provide for broadcasting over a cable" and that "the broadcast cable techniques are clearly not relevant to the claimed invention;

they provide for transmission to many possible users simultaneously while the claimed system sends a program only to a single intended recipient." Jorgenson Decl., Ex. T at 8 (5/22/91 Amendment). The applicants touted, *inter alia*, the advantage of "security provided by calling only preauthorized locations" as a feature of a switched telephone network.

The same distinction drawn by the applicants between a "switched telephone network" and a cable system is true of TWC's cable system. In TWC's system, coaxial cables deliver broadcast content to a multitude of set-top boxes. Hardin Decl., ¶¶ 3, 5-11. TWC's system does not involve any point to point transmission over telephone lines. *See id.* at ¶ 13. The Hardin Declaration describes the process used to receive a video-on-demand program:

**REDACTED**

*Id.* at ¶ 10-11.

Thus, in the TWC system,

**REDACTED**

Moreover, the TWC system does not provide security "by calling only preauthorized locations" as in "the claimed system." Such a mechanism is not possible in

a cable system such as TWC's.  *See id.* at ¶ 13

**REDACTED**

**E.**     **USVO Should Be Enjoined From Pursuing Infringement Claims Against TWC in Texas**

Federal Circuit law applies to the granting or denying of "injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts." Lab. Corp. of Am. Holdings v. Chiron Corp., 384 F.3d 1326, 1331 (Fed. Cir. 2001).   Such decisions are vested in the discretion of the district courts and are reviewed under the abuse of discretion standard.  *Id.* at 1331-1333 (affirming grant of injunction against prosecution of second field case and stating that "[d]istrict courts are granted broad latitude in managing the cases before them").

For all of the reasons set forth above, Delaware is the district in which TWC and USVO should litigation their dispute.   Where, as here, the same parties as well as the same issues are involved in the two actions, an injunction of the Texas action is warranted. Thales Airborne Sys. S.A. v. Universal Avionics Sys. Corp., 2006 U.S. Dist. LEXIS 41895, *12 (D. Del. 2006) (denying transfer and enjoining defendant from proceeding in New Jersey); *see also* Cosden Oil & Chemical Co. v. Foster Grant Co., 432 F. Supp. 956, 960 (D. Del. 1977) (enjoining defendant from proceeding in Texas).

## IV.    CONCLUSION

For the foregoing reasons, TWC respectfully requests that the Court deny USVO's motion to dismiss, stay or transfer this litigation. Additionally, TWC respectfully requests that the Court enter an injunction preventing USVO from pursuing a duplicative infringement claim against TWC in the Eastern District of Texas.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Jeffrey M. Olson
Samuel N. Tiu
Matthew S. Jorgenson
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
(213) 896-6000

Dated: September 7, 2006

172933.1

32

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2006, the attached **REDACTED PUBLIC VERSION OF PLAINTIFF TIME WARNER CABLE INC.'S ANSWERING BRIEF IN OPPOSITION TO USVO'S MOTION TO DISMISS, STAY OR TRANSFER AND REQUEST FOR INJUNCTION AGAINST DEFENDANT USA VIDEO TECHNOLOGY CORP. FROM PROCEEDING WITH DUPLICATIVE LITIGATION IN THE EASTERN DISTRICT OF TEXAS AGAINST TIME WARNER CABLE INC.** was served upon the below-named counsel of record at the addresses and in the manner indicated:

Richard K. Herrmann, Esquire                          HAND DELIVERY
Morris James Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801

Edward W. Goldstein, Esquire                          VIA FEDERAL EXPRESS
Goldstein, Faucett & Prebeg, L.L.P.
1177 West Loop South, Fourth Floor
Houston, TX  77027

                                    /s/ John G. Day
                                    _____
                                    John G. Day

172633.1